Commonwealth *v.* Oreszak, Appellant.

Argued September 27, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*J. Harold Hughes,* with him *Theodore Smithers* and *John E. McDonough,* for appellant.

*Guy G. deFuria,* Assistant District Attorney, with him *Wm. B. McClenachan, Jr.,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, November 12, 1937:

Defendant was one of four indicted and separately tried for the murder of Floyd Tranom. He was found guilty and sentenced to death. The history of the crime may be found in *Com. v. Rose,* 327 Pa. 220, 193 A. 17, and need not be repeated except to show from the Commonwealth's evidence defendant Oreszak's participation therein. He met Rose and Duminiak on the night of the crime and together they started on a tour of burglary and robbery. They stole an automobile and drove about the city looking for places and victims, defendant driv-

ing. They held up and robbed Butler, who was forced to accompany them. They visited a number of places bent on burglary or robbery; defendant, always driving, kept the motor running to facilitate quick escape. Being unsuccessful in several attempts to break and enter, they drove to a lonely spot known as Lovers' Lane. There, after being frustrated in an attempt to hold up another couple, they came upon a parked car in which Tranom and a woman companion were seated. Defendant parked the car within a block of Tranom's vehicle, and the four approached quickly to rob the intended victims. Tranom was dragged from the car at the point of a gun, robbed, beaten and shot by Rose while attempting to escape. His companion, Mattie Bussey, was taken back to the bandits' car and compelled to submit to intercourse with defendant and the two other white members of the band. Defendant, Rose and Duminiak then abandoned the stolen car and returned to their homes.

After the arrest of the accused men, an inquiry was held at which they, the assistant district attorney, police officials and a stenographer, were present. Their statements concerning the crime were taken stenographically. Defendant was not present throughout the first part of the inquiry, but when he was brought back to the room the complete stenographic report was read to him. He then gave a voluntary statement of his own, and after hearing it read, asked for a few minor corrections in the joint narrative, which were noted, and joined with the others in signing the transcript. This statement was introduced at the trial over objection of defendant's counsel.

Defendant insisted that he was not at the actual scene of the shooting, but was asleep in the stolen car several blocks away; that he had no knowledge of his companions' intention to commit robbery or rape when they left the car, and did not know of the crime until the next morning. Rose testified in support of this statement. After sentence this appeal followed.

The principal reason urged for a new trial is the admission in evidence of the joint statement or confession of the defendant and his accomplices. It was not a detailed, uninterrupted narrative by the defendant alone, but one in which each actor in an informal way had a part, their remarks being interspersed with questions from the prosecutor. At times the accused questioned each other. It represented in its entirety not only defendant's recital of his participation in the crime, but a relation by his accomplices of their acts and their version of his connection with the crime. It may be divided into three parts: (1) statements by the accomplices made in his absence, (2) statements made by them in his presence, and (3) his own statements.

The first two divisions depend for their admissibility upon the defendant's conduct in relation to them. When the accused acknowledges the truth of the statements of his accomplices, they become admissible not as evidence or statements of his accomplices but as his own admission of the facts they relate. See *Com. v. Rose,* supra; *Com. v. Ballon,* 229 Pa. 323; *Com. v. Lawrence,* 282 Pa. 128; *Com. v. Carelli,* 281 Pa. 602. The first two parts of this statement were rendered admissible by defendant's assent, and the third part, his own contribution, was undoubtedly admissible.

Joint confessions are not new in the law of evidence; to be admissible they must be the free and voluntary expressions of the persons taking part therein concerning the commission of a crime in which they are culpable. If the confession is in writing, it must appear that the accused has had full knowledge of its contents, assented to its truth, or adopted the statement as his own freely and voluntarily. If he is absent when the statement or a portion of it is made, it nevertheless becomes his statement if, knowing its contents, he voluntarily assents to it. If at the time the statement is submitted, he contradicts or denies any part of it, to that extent the joint statement, or any implication arising from

the denial, is hearsay and cannot be offered against him. Its evidentiary value is limited to the statements admitted by him to be true and those he contributed: See *Com. v. Mazarella,* 279 Pa. 465, 470; *Com. v. Epps,* 298 Pa. 377, 380. Full, free and fair opportunity must be afforded to deny or correct those portions referring to his connection with the crime. The evidence of assent to or adoption of the joint statement should be free from doubt.

This statement and its effect as evidence were considered by this Court in *Com. v. Rose,* supra. In that case its admission against Rose was upheld. Defendant strongly objects to the statement as hearsay, and contends that it contains questions and answers not admissible in a criminal trial. In the *Rose* case, we said at p. 223: "Appellant mistakes the purpose of the offer of this statement by the Commonwealth. It was not introduced as the testimony of his accomplices, thereby depriving him of the right of cross-examination, but it was offered as a confession by him in so far as he admitted the facts stated in his presence by the other participants in the crime, and explained his part in its perpetration."

But, it is urged that the present case is distinguishable from the *Rose* case in that Rose was present during the whole of the examination, whereas this defendant not only denied certain particulars but was absent when a portion of the others' statements was made. Although defendant was absent during a part of the time the joint statements were made, the entire transcript was read to him; he was given ample opportunity to make corrections, which he did, and signed the joint statement as his own. His own contribution shows participation in the felonies up to the time of the last robbery and murder. He therein admitted driving the car to within a short distance of the Tranom car, and that his three accomplices started out to rob its occupants, but denied he took part in the robbery or murder, though he admitted having intercourse with the girl after the mur-

der. With these exceptions his narrative supports the statement of his accomplices. He then, after the entire joint statement was read to him, adopted the entire statement as explained and qualified by him as his own. The admission of these facts, together with the proof that the killing occurred in the perpetration of that felony, is a confession by the defendant of his participation in murder.

In *Com. v. Carelli,* supra, the statements of accomplices were admitted as a confession of the accused. The latter was not present when they were made, but when they were read to him he assented to their correctness. In *Com. v. Lawrence,* supra, the confessions of accomplices were read to the accused, and assented to by him except for minor changes.

The joint statement represented defendant's admission that he was joined with the others on the night of the crime as a participant in the various felonies completed and attempted, knew the purpose for which his companions left the car in Lovers' Lane, and that one of them was armed. Their statements as to acts done, which were admitted by him to be true, he adopted as his statement as though he had uttered them. The association with the felonious enterprise in such a manner as described makes him equally responsible with the others for the death of Tranom regardless of who fired the fatal shot: *Com. v. Doris,* 287 Pa. 547, 550; *Com. v. Rose,* supra, at p. 19; *Com. v. Crow,* 303 Pa. 91, 98. The statement in the present case was made by the defendant and the others voluntarily, without coercion or inducement. He was warned of the charge against him, and instructed as to his constitutional right to avoid self-incrimination. He was fully apprized of the conversation which preceded his own examination and given several opportunities to correct or deny. He made his own statement willingly and with equal freedom of action, assented to and signed the transcript of the entire conversation. There can be no doubt that the transcript

meets the requirements for admission of confessions in every particular. Furthermore, there was no essential element in the statement that was not corroborated by the Commonwealth's direct evidence.

The trial judge, in charging the jury, was careful to limit the effect of the transcription as a confession of the accused, which could not be used as testimony of the other participants. This was not error, nor was it confusing to the jury.

It is contended that defendant was improperly cross-examined concerning a previous crime, in violation of the Act of March 15, 1911, P. L. 20, when the assistant district attorney asked if he was in a "stolen" car with his companions on the occasion. Whether the car was stolen was not at issue. The theft had been established by defendant's own witness, Rose, and the only purpose of the question was to show the presence of defendant on the expedition. The theft of the car used to convey the bandits to the place where the killing was committed was not only important as part of the history of the crime (Commonwealth v. Crow, supra, at p. 99), but to show systematized, concerted and connected acts; that they were out on a felonious expedition of robbery and burglary, beginning with the theft of the car and terminating in a felonious killing and rape.

It is also urged that the assistant district attorney gave unsworn testimony corroborating the Commonwealth's witness, Mattie Bussey, concerning a written statement made by her to the police, which was not in evidence. She had admitted that she had told a police officer that Butler did the shooting. She was asked if she hadn't signed a written statement that he did. She denied this. The district attorney volunteered: "That's right. I have a statement here that she didn't." The statement referred to was offered to defense counsel for admission in evidence if he so desired. He failed to do so and alleges that by urging him to introduce it in evidence he was placed in false light before the jurors.

There was nothing prejudicial in this episode. Defendant's counsel brought out the fact of the written statement and referred to its contents; by so doing, without offering something to the contrary, the Commonwealth may have been prejudiced. The court was not in error in refusing to withdraw a juror.

We do not regard the other remarks of the trial judge during the course of the trial and in the charge as prejudicial. The court left all questions of fact to the jury. The judge very carefully instructed the jurors concerning the facts and the law, and fairly stated the opposing theories of guilt. No exceptions were taken to the charge and no suggestions or corrections were offered by counsel for defendant at the judge's invitation.

The record has been carefully examined and discloses ample evidence to support the verdict of the jury and the sentence of the court. The elements of murder in the first degree were clearly established by the witnesses for the Commonwealth.

Judgment is affirmed, and record remitted for purpose of execution of sentence.