## Commonwealth v. Kulb

*Carl B. Shelley*, district attorney and *H. F. Dowling*, assistant district attorney, for Commonwealth.

*Rhoads & Sinon*, for defendant.

*Charles E. Thomas* and *Jack F. Aschlinger*, for Pennsylvania Public Utility Commission.

BRAHAM, P. J., (fifty-third judicial district, specially presiding), May 4, 1951.—Defendant, Joseph Kulb, having been convicted in a summary proceeding of a violation of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1101 et seq., has appealed to this court. The appeal was heard before Woodside, J., before he was honored by being appointed Attorney General of Pennsylvania. The case must now be decided on the basis of the record made up before Judge Woodside.

Was defendant engaged in business as a contract hauler, as the Commonwealth contends, or was he merely lessor of a truck of which the lessee had entire control, as defendant contends? That is the issue.

The sections of the Public Utility Law of 1937 which defendant is charged with violating are section 201 (*b*), 66 PS §1121, and section 1311, 66 PS §1501. The first section makes it unlawful to render service as a public

utility without having a certificate of public convenience, the second imposes penalties for violation of the first. The public service which defendant is charged with having furnished is the carriage of goods, not as a common carrier, but as a contract carrier.

Article 2(6) of the Act of 1937, as amended, 66 PS §1102(6), defines common carrier by motor vehicle; and article 2(7), as amended, 66 PS §1102(7), defines contract carrier by motor vehicle. The latter definition is as follows:

" 'Contract Carrier by Motor Vehicle' means any person or corporation who or which provides or furnishes transportation of passengers or property, or both, or any class of passengers or property, between points within this Commonwealth by motor vehicle for compensation, whether or not the owner or operator of such motor vehicle, or who or which provides or furnishes, with or without drivers, any motor vehicle for such transportation, or for use in such transportation, other than as a common carrier by motor vehicle, but shall not include—(a) a lessor under a lease given on a bona fide sale of a motor vehicle where the lessor retains or assumes no responsibility for maintenance, supervision or control of the motor vehicle so sold; etc."

The common carrier invites the custom of all persons indiscriminately, the contract carriers are all those who transport goods for hire except as common carrier. This includes, of course, those who make specific engagements with a limited number of customers: Pennsylvania Public Utility Commission v. Gornish et al., 134 Pa. Superior Ct. 565; Merchants Parcel Delivery, Inc., v. Pa. Public Utility Commission, 150 Pa. Superior Ct. 120, 129.

It is defendant's contention that he leased his truck to the Philadelphia Tin Plate Company, which used the truck only to haul its own merchandise. Defendant

is quite right in insisting that the mere renting of a truck to another who assumes entire control and management of it does not make the renter either a common or a contract carrier. The language which appears in both the common carrier and the contract carrier sections of the act, "or who or which provides or furnishes any motor vehicle, with or without driver, for transportation or for use in transportation of persons or property as aforesaid," does not go so far as to make the mere leasing of motor vehicles common carriage. So much was contended for the act but this contention was rejected as unconstitutional in Hertz Drivurself Stations, Inc., v. Siggins et al., 359 Pa. 25.

Nor is the carriage of property which belongs to the carrier a carriage subject to regulation. This is the subject of a specific exclusion in section 2 (6) (e), which relates to common carriage, 66 PS §1102(6) (e). The point was clearly ruled as to both types of carriage in C. W. Allaman et al. v. Pennsylvania Public Utility Commission et al., 149 Pa. Superior Ct. 353.

One further point before considering the evidence. If the Commonwealth has shown the rendering of service as a common or a contract carrier, it need not show defendant's lack of a certificate to go forward with the proof that he was not a carrier subject to regulation: Commonwealth v. Bitzer, 163 Pa. Superior Ct. 386; Commonwealth of Pennsylvania v. Freed, 106 Pa. Superior Ct. 529.

The facts established by the evidence, stating the case from the Commonwealth's point of view, are these. At sometime prior to May 1, 1950, defendant owned at least two trucks and was engaged in hauling for the Philadelphia Tin Plate Company under such circumstances that he was prosecuted and fined for violating the Public Utility Law. On May 1, 1950, defendant and the Tin Plate Company entered into the written agreement which is Commonwealth's exhibit no. 1.

This agreement provided for the renting to the company by defendant of a tractor and trailer for a period of one week and thereafter from week to week. The company as renter agreed: To use the vehicle only in its own business and not as a common carrier; to keep it insured for the benefit of defendant and itself; to pay a minimum rental charge of $12 per day for each of five days per week and in addition 25 cents for each mile operated with a minimum guarantee of 300 miles per week, and to return the vehicle in good condition at the end of the term. Defendant as lessor agreed to maintain the motor vehicle and trailer in good order and repair, except for damage caused by the gross negligence of the Tin Plate Company, and to pay for all gasoline, oil and lubrication.

Continuing from the Commonwealth's point of view there is evidence that one of the drivers for the Tin Plate Company, Dimitri Dangel, told Murrell Dobbins, investigator for the Public Utility Commission, that it was defendant who had employed him to make the trip for defendant on that particular day.

Defendant attacks the version of the Commonwealth first by condemning the employment of two types of evidence against him. First, says defendant, the evidence of his prior conviction was incompetent, citing the Act of March 15, 1911, P. L. 20, 19 PS §711. It is unnecessary at this time to recount the extensive series of exceptions to this statute which have developed in practice: Commonwealth v. Williams, 307 Pa. 134, 148. Controlling in the case at bar are the exceptions which allow a prior conviction to be shown as part of a chain or sequence of events (Commonwealth v. Oreszak, 328 Pa. 65, 71) ; or to show the true motive for doing the act (Commonwealth v. Musto, 348 Pa. 300, 307), or to show plan and design (Com. v. Apriceno, 131 Pa. Superior Ct. 158). Under these principles it was clearly competent in the case at bar to show

that the method of dealing between defendant and the Tin Plate Company was designed to avoid a repetition of conviction under the Public Utility Law by changing the form without changing the substance.

Next defendant complains of the employment of the hearsay statements of Dimitri Dangel, the driver, against him. The point sought to be established was proof that defendant and not the Tin Plate Company was employing and directing the drivers of defendant's truck. The trial judge admitted, over objection, the statement:

" 'I hope I will not get into any trouble because of this case, I have been employed by the Philadelphia Inquirer and' he said 'this is my off day there, and I am just doing this because Mr. Kulb asked me to make the trip for him today.' "

There is some authority holding this type of evidence competent: Bausbach v. Reiff, 244 Pa. 559; Brown, Pennsylvania Evidence, page 169.

Proof that defendant was selecting and directing the drivers, independent of the hearsay evidence, is found in defendant's own testimony. He was asked on cross-examination:

"Mr. Kulb, do I understand that you are employed as a mechanic by the Philadelphia Tin Plate Company?" He answered "Mechanic and maintainer and operate these trucks."

The contract was drawn by defendant's lawyer but even its terms are not conclusive. There is no provision that defendant was not to act as driver or indeed that defendant was to have entire control. Add to the contract defendant's admission that defendant was "operating these trucks" and note that when the engineer for the Tin Plate Company, Murrell Dobbins, was asked who directed the trucks he merely said the Philadelphia Tin Plate Company without naming any individual. If by some arrangement outside the writ-

ten contract defendant was to operate the trucks for the company Mr. Dobbins' answer would be correct, but it was defendant who controlled for the company.

In passing upon this case as a matter of fact it is found that the facts and inferences contended for by the Commonwealth are substantially correct. The precarious nature of defendant's situation will be better understood if the facts are viewed as a whole. Every one agrees that if defendant merely leased his truck to the Tin Plate Company he would be not guilty: Hertz Drivurself Stations, Inc., v. Siggins, supra. If, on the other hand, he leased the truck to the company but continued to drive it and control its operation he might be found guilty: Ashcraft v. Conte Eastwood Co., 20 Pa. PUC 58, 60. The test is the measure of control: Reavley v. State (Tex.), 63 S. W. (2d) 709; Georgia Truck System, Inc., v. Interstate Commerce Commission, 123 F. (2d) 210.

Viewed as a whole the evidence discloses that defendant owned the truck in question, insured it partly for his benefit, kept the truck in a garage at night, furnished the necessary gas and oil, kept it in repair leased it to the Philadelphia Tin Plate Company five days each week for a fixed fee, had the use of the truck during the remainder of the time, sometimes drove it for the Tin Plate Company and at other times arranged for the drivers. All of this viewed as a whole convinces us that what defendant was doing was acting as a contract carrier for the Philadelphia Tin Plate Company but attempting to conceal the true relationship by the device of acting as the lessor of the truck and the employe of the company.

Entertaining these views we make the following

### Order

Now, May 4, 1951, defendant is found guilty of violating section 201 (*b*) of the Public Utility Law of

1937, P. L. 1053, as amended, 66 PS §1121, by engaging in business as a contract carrier for the Philadelphia Tin Plate Company without first securing a certificate of public convenience authorizing him to do so.

Defendant is directed to pay a fine of $100 as provided by law, and the costs of prosecution.

Rupp, P. J., and Sohn, J., did not participate in the disposition of this case.

### SUPPLEMENTAL OPINION

BRAHAM, P. J., (fifty-third judicial district, specially presiding), February 15, 1952.—This case is before the court upon an application by defendant to have the order of court dated May 4, 1951, stricken off. By that order the court found defendant guilty of engaging in business as a contract hauler without being authorized to do so. The reason assigned for the pending motion is the variance between the charge contained in the information,—which is construed by defendant to be operating as a common carrier—and the finding of the court that defendant operated as a contract carrier.

The court found defendant guilty of contract carriage. It was freely admitted by the Commonwealth at oral argument that the evidence does not make out a case of common carriage. Defendant is guilty of contract carriage without a permit or guilty of nothing.

The language of the information was as follows:

"Unlawfully transport, permit or cause to be transported property, as a common carrier, between points within this Commonwealth for compensation without first having obtained a Certificate of Public Convenience authorizing same, all of which is contrary to Section 201 (B) and 1311 of the Pennsylvania Public Utility Law, enacted May 28th, 1937, P. L. 1053 as amended.

"The direct violation consists of the defendant's truck bearing Pennsylvania license Y-929-B transporting tin from American Can Company, Harrisburg, Dauphin County, to either Philadelphia Tin Plate Company or Roth's Steel Company, Philadelphia, Philadelphia County, Pennsylvania.

"All of which is contrary to Sections 201 (b) and 1311 of the Pennsylvania Public Utility Law, enacted May 28, 1937, P. L. 1053 as amended.

"Complainant therefore prays and desires that a warrant may be issued, and that defendant may be arrested and held to answer to the charge of violating the Public Utility Law".

The words "violation of the Public Utility Law" look toward a general violation which might include both common carriage and contract carriage. The same words appear on the recognizance which defendant gave for his appearance. However, when the case came on for hearing before Judge Woodside, Mr. Dowling for the Commonwealth stated: "I think the question can be resolved to whether the defendant is operating as a common carrier".

Again in the Commonwealth's brief it stated: "The question has been resolved to whether the defendant, Joseph Kulb, in the use of his motor vehicle and trailer, is rendering a transportation service as a common carrier under the Public Utility Law, supra, and is required to obtain, from the Public Utility Commission, a certificate of public convenience and necessity as a common carrier", etc.

Both the information and the briefs cite section 201(b) of the Act of May 28, 1937, P. L. 1053, 66 PS §1121. This section makes it unlawful to begin service as a public utility until after obtaining a certificate of public convenience. This section was mistakenly cited by the court in its opinion giving reasons for finding defendant guilty of furnishing service as

a contract carrier. In point of fact article VIII of the Public Utility Law of 1937 deals with a contract carriers and section 804 of the Act, 66 PS §1304, requires the contract carrier to obtain, not a permit, but a certificate of public convenience before beginning service.

Section 1311 of the Public Utility Law of 1937, as amended, 66 PS §1501, was cited in the information, in the original brief of defendant, and in the opinion of the court. This is the penalty section under which violations of the law by a contract carrier, or a broker are to be punished. It is the theory of the Commonwealth that under this section the offense is the transportation of persons or property for hire without certificate, permit or license: Commonwealth v. Babb, 166 Pa. Superior Ct. 63, 66; Commonwealth v. Zellers, 52 D. & C. 117. It is the theory of defendant that, whereas section 1311 permits prosecution for either common or contract carriage, the Commonwealth has elected to proceed against defendant only for common carriage. Defendant relies upon Commonwealth v. Komatowski. 347 Pa. 445, a case in which defendant on trial for murder was found guilty of "murder in the third degree", an offense unknown to the law.

Indictments are usually the work of lawyers. They must be "drawn with meticulous accuracy" so that a defendant may know the charge he has to meet: Commonwealth v. Komatowski, supra, 453; Commonwealth ex rel. Moszczynski v. Ashe, Warden, 343 Pa. 102; Commonwealth v. Gallagher, 9 Pa. Superior Ct. 100; Commonwealth v. Cohen, 1 Berks L.J. 326.

As to informations the law is not so exacting: Commonwealth v. Grego, 116 Pa. Superior Ct. 295; Commonwealth v. Burkhart, 23 Pa. 521; Commonwealth v. Nichols, 38 Pa. Superior Ct. 504. As was said by Judge Porter in Commonwealth v. Haines, 55 Pa. Superior Ct. 359:

"The office of the written information is to identify the crime charged, and this it may do by employing a generic term, or in the words by which the crime is designated in the common language of the people; it is not necessary that it charge the offense with the detail and technical accuracy required in an indictment".

The Commonwealth relies upon the consolidation of offenses in section 1311, the penalty clause. There are other statutes in which there is like consolidation. For example, in section 620 of The Vehicle Code, 75 PS §231, punishment for violations of all license provisions is provided, some after summary conviction, some after indictment and conviction.

In the case at bar the record was made up before Judge Woodside upon a charge of operating a common carrier. It seems to have been so understood by all. The measure of proof required to disprove a charge of unlawful carriage differs from that required in a case of contract carriage.

This was a close case on the issue of contract carriage. When, to the difficulties thereto incident, there must be added conviction for an offense not clearly charged the interests of justice require relief. Defendant must be found not guilty of the pending charge. This does not mean that he goes free of the charge of operating as a contract carrier without a permit. Our action is rather in the nature of arrest of judgment and leaves the way open for further proceedings conformable to this opinion: Commonwealth v. Pahlman, 118 Pa. Superior Ct. 175.

Entertaining these views we make the following

*Order*

Now, February 15, 1952, the sentence imposed by order of this court on May 4, 1951, is hereby stricken off and defendant is found not guilty without pre-

judice to the right of the Commonwealth to proceed against defendant for the offense of operating as a contract carrier without a permit. The costs are placed on Dauphin County.