Commonwealth *v.* Cheeks, Appellant.

Submitted November 13, 1967.. Before BELL, C. J., MUSMANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edward K. Nichols, Jr.,* for appellant.

*Benjamin H. Levintow* and *Alan J. Davis,* Assistant District Attorneys, *Richard A. Sprague,* First.Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, March 15, 1968:

In 1964 appellant, charged with the felony-murder of one Joe Howell, pleaded not guilty and faced a trial before judge and jury which resulted in a first degree murder conviction with a life sentence. Cheeks then appealed to this Court alleging (1) that inadmissible hearsay evidence had been used against him; (2) that his confession was inadmissible under *Escobedo;* (3). that the same confession, if not tainted solely by *Escobedo,* was at least involuntary under *Davis v. North Carolina,* 384 U.S. 737, 86 S. Ct. 1761 (1966); and (4) that the Commonwealth. had failed to prove that appellant's act was the cause of death. Cheeks' appeal was argued before this Court on January 13, 1966. On September 27, 1966 this Court, in an opinion written by Mr. Justice EAGEN, affirmed the conviction. *Commonwealth v. Cheeks,* 423 Pa. 67, 223 A. 2d 291 (1966),

Appellant then filed a petition for reargument in which he alleged, for the first time, that the use at trial of three confessions of appellant's three accomplices, each implicating Cheeks, violated appellant's Sixth Amendment right of confrontation made applicable to the states by *Pointer v. Texas,* 380 U.S. 400, 85 S. Ct. 1065 (1965), and *Douglas v. Alabama,* 380 U.S. 415, 85 S. Ct. 1074 (1965). Although these cases were decided April 5, 1965, more than nine months before oral argument, appellant's reargument petition urged that he should not be barred from raising the *Pointer* claim in a second oral argument because the actual trial of the case predated both *Pointer* and *Douglas* and furthermore because Cheeks' initial appeal had been perfected and the briefs printed also prior to *Pointer* and *Douglas.* No reason was offered, however, for counsel's failure to raise the Sixth Amendment claim for the first time *at oral argument,* or for his failure to request leave to file a supplemental brief at that time. The petition for reargument was denied by this Court, per curiam, on November 7, 1966.

Cheeks next sought federal habeas corpus relief. He was rebuffed there also. In an opinion written by Judge JOHN LORD, JR., the federal district court denied Cheeks' petition, without a hearing, on the ground that he had not yet exhausted his available state remedies. See *United States ex rel. Cheeks v. Prasse,* 261 F. Supp. 760 (E.D. Pa. 1966). It was held that Cheeks' *Pointer* claim had not been finally litigated by virtue of the denied reargument petition, the federal court believing that such a disposition was not equivalent to a decision on the merits. Having been thus invited by the federal court to seek state collateral relief, Cheeks filed a petition under the Post Conviction Hearing Act which was in turn denied without an evidentiary hearing by Judge REED of Philadelphia County Court of Oyer and Terminer. In a brief opinion Judge

REED concluded (1) that the *Pointer* claim had been finally litigated when reargument was denied; (2) that, in any event, by failing to raise the *Pointer* claim at his *first* oral argument before the Supreme Court, Cheeks had waived the right to test this claim collaterally; and (3) that, even on the merits, the alleged *Pointer* violation could not be established. It is from this adjudication that Cheeks has taken the present appeal.

Before reaching the merits of appellant's *Pointer* claim, it is first necessary to decide whether Cheeks had, in fact, lost the right to raise the claim in a Post Conviction Hearing Act proceeding because of some prior conduct by either himself or counsel. Section 4 of the Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, §4, 19 P.S. §1180-4 (Supp. 1966)[1] establishes two grounds upon which collateral relief may be denied without reaching the merits of petitioner's claim. Thus, Cheeks will be considered ineligible for relief if his *Pointer* claim has been either

---

[1] "(a) For the purpose of this act, an issue is finally litigated if: (1) It has been raised in the trial court, the trial court has ruled on the merits of the issue, and the petitioner has knowingly and understandingly failed to appeal the trial court's ruling; or (2) The Superior Court of the Commonwealth of Pennsylvania has ruled on the merits of the issue and the petitioner has knowingly and understandingly failed to avail himself of further appeals; or (3) The Supreme Court of the Commonwealth of Pennsylvania has ruled on the merits of the issue.

(b) For the purposes of this act, an issue is waived if: (1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this act; and (2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue.

(c) There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure."

finally litigated or if the right to raise that claim has been waived.

Judges REED and LORD have already reached contrary conclusions on the issue of whether appellant's *Pointer* claim has been finally litigated, their disagreement turning on the proper significance to be accorded the denial of a petition for reargument. Since we believe that such a disposition does not meet the test set out in §4 for final litigation of a matter, we hold that Cheeks' *Pointer* claim has not been finally litigated. In order to hold that an issue has been finally litigated because of action taken by the Supreme Court, §4 requires a showing that "[t]he Supreme Court of the Commonwealth of Pennsylvania has ruled *on the merits* of the issue." (Emphasis supplied.) We agree with Judge LORD that the per curiam denial of reargument cannot amount to a disposition "on the merits" of a claim pressed for the first time in the reargument petition itself.

Supreme Court Rule 71 states, inter alia, that the petition for reargument "must specify particularly the point supposed to have been overlooked or misapprehended by the Court." Certainly, it cannot be said that our Court "misapprehended" the *Pointer* claim, since it was never in fact raised. Furthermore, we believe that a proper interpretation of the term "overlooked" in the rule would require a showing that our Court failed to consider some finding of fact or proposition of law relevant to the disposition of an issue *actually raised* by the parties.[2] It does not mean that reargu-

---

[2] See, e.g., *Pennsylvania Society for the Prevention of Cruelty to Animals v. Bravo Enterprises, Inc.*, 428 Pa. 350, 237 A. 2d 342 (1968). In that case reargument was granted when it appeared that the Court "overlooked" a relevant statute which, when applied, properly resolved the issue of plaintiff's standing in the court below. Unlike the present case, in *Bravo*, the issue of standing *was* raised at the initial oral argument, albeit without reference to the crucial statute.

ment may be granted simply because one of the *parties* "overlooked" a relevant issue. Thus, in the present case, since Cheeks' petition failed to show either that the Court misapprehended or overlooked any point raised in his appeal, the petition was properly denied without ever reaching the merits of the *Pointer* claim therein asserted. Section 4 clearly requires a disposition on the merits before any issue can be deemed finally litigated in the Supreme Court. Therefore, appellant does not here trip over that hurdle in the Post Conviction Hearing Act.

The problems posed in the present case by §4's *waiver* provision, however, are more difficult to resolve. The overall import of a §4 waiver is that a petitioner may not raise an issue in a Post Conviction Hearing Act proceeding if he has had any previous opportunity to raise the issue, but failed to do so, provided however that this failure was knowing and understanding and that there are no extraordinary circumstances attendant upon the failure to raise. Tracing the route of Cheeks' journey through our Commonwealth's courts, we can see two points at which the *Pointer* claim could have been raised, but was not. These two points are Cheeks' initial trial, and his direct appeal to our Court. As to the first, his trial, there can be no waiver. Admittedly no *Pointer* objection was voiced by counsel when the Commonwealth introduced the confessions of appellant's accomplices; but this failure to object is easily explained by the simple fact that Cheeks' trial took place in May of 1964, almost a full year before *Pointer* and *Douglas* were decided. It would be manifestly unfair to hold appellant to a waiver when this waiver is alleged to have occurred at a time when neither the defendant nor his attorney had any way of knowing that there existed a right to be waived. The Supreme Court of the United States has already expressed this view in *O'Connor v. Ohio,* 385 U.S. 92, 87

S. Ct. 252 (1966), a case followed by this Court in *Commonwealth v. Baity*, 428 Pa. 306, 237 A. 2d 172 (1968).

But what of counsel's failure to raise the *Pointer* claim during oral argument before this Court? *O'Connor* cannot control here because the appeal was not heard until nine months after *Pointer* and *Douglas* became law. This, we believe, is more than enough time for counsel to have become familiar with such a significant development in constitutional law. Nevertheless, there may still exist a justifiable reason for counsel's silence during argument on the *Pointer* issue. Cheeks' attorney may have believed that any attempt to raise the *Pointer* issue on appeal would have been rebuffed by our Court under the well established doctrine that matters not raised at trial cannot be raised for the first time on appeal. This would be especially true during appeals that were argued before counsel or this Court had the benefit of *O'Connor*, a case not decided until November, 1966, almost a year after the *Cheeks'* appeal was argued. Nor, at the time of Cheeks' appeal, had this Court decided *Commonwealth v. Jefferson*, 423 Pa. 541, 546, 226 A. 2d 765, 768 (1967), wherein it was strongly implied that the prior nonavailability of newly established rights would excuse apparent waivers. The only significant flaw in this argument, however, is the fact that appellant's counsel *did* seek reargument on *Pointer* grounds, rather than relying solely upon a collateral proceeding to vindicate his client's rights. Thus, without more, we might be forced to hold that Cheeks' *Pointer* claim has been waived. But, fortunately for appellant, there *is* more.

Even were we to assume that counsel had no legitimate reason for his failure to raise the *Pointer* issue on appeal, this course of conduct, a course unguided by any tactical considerations, should not be imputed

to the defendant himself. Implicit in our decision in *Commonwealth v. Snyder*, 427 Pa. 83, 233 A. 2d 530 (1967) is the notion that counsel's actions can never bind his client when these actions are unmotivated by *any* reasonable, tactical choice. Moreover, we held in *Snyder* that a valid §4 waiver must amount to a *deliberate* bypass of available state procedure. Certainly, then, when the available state procedure is ignored by counsel for *no* apparent reason whatsoever, this cannot be considered "deliberate" on the part of his client. Thus, if counsel's failure to raise the *Pointer* claim on appeal resulted merely from his inability to keep abreast of new developments in the law, no waiver should be imputed to Cheeks. Cf. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A. 2d 349 (1967). Left therefore with Cheeks' *personal* failure to raise the *Pointer* claim on appeal as the *sole* support for a possible waiver, there can certainly be no penalty assessed against appellant. Not only does a criminal defendant himself have little or no say in his appellate strategy, but even if Cheeks had prepared his *own* appellate brief, the failure of a layman to appreciate the significance of *Pointer* within nine months of its decision would certainly constitute exceptional circumstances justifying his failure to timely raise the argument. We therefore hold that appellant's *Pointer* claim is properly cognizable, on the merits, in this proceeding, and turn therefore to a resolution of it.

During the course of appellant's trial, the Commonwealth read into the record a confession given by one Craig Smith who was not called to testify. The confession implicated Cheeks. A similar confession of William Dyson, implicating appellant, was referred to, although not actually read, by a detective whose testimony was used to rebut that of a certain defense witness. The third confession, given by Joseph Baird, was also used by the Commonwealth. But Baird *was* called to

the stand, and so the use of his confession cannot support appellant's *Pointer* claim. As for the confessions of Smith and Dyson (two men who were not present at trial), it is clear that their use *would* violate the Sixth Amendment right of a defendant to confront his accusers, provided these confessions were in fact used in lieu of the two men themselves, and were introduced as the "testimony" of two witnesses to the crime. However the Commonwealth asserts that these statements were actually introduced *as the statements of the defendant,* on the theory that Cheeks' own confession incorporated the confessions of his three accomplices. We decided in appellant's direct appeal that his confession was properly introduced. Thus, two issues must be resolved: whether that confession adopts the statements of Smith and Dyson; and if it does so adopt, whether the use of the accomplices' confessions nevertheless runs afoul of the Sixth Amendment.

Part of appellant's confession, read into the record, consisted of the following: "Q. You were shown the statements of Craig Stephen Smith, Joseph Baird and William Dyson, are they correct in what they said? A. Yes, sir, all except Joe Baird's statement that I tried to give him the bloody knife with the pearl handle. That was wrong[3] Q. What do you think of Craig Stephen Smith's statement? A. It is true." (Record at 509.)

We agree with the court below that this clear, unequivocal language of appellant, accepting as true the confessions of his accomplices, is sufficient to permit the introduction of the challenged statements as admissions of Cheeks himself. To conclude otherwise would not only be a sharp departure from the long

---

[3] The part of Baird's confession repudiated by appellant is not probative on the issue of Cheeks' guilt. Moreover, since Baird himself testified at appellant's trial, the introduction of Baird's confession could not here work any constitutional violation.

established rule of both our own cases and of respected text writers, but would also extend the *Pointer* rationale far beyond that expressed by the Supreme Court.

Since the *Pointer* and *Douglas* decisions it has been widely recognized that the Sixth Amendment right of confrontation shares a common raison d'etre with the common law rules of hearsay. In fact, it can be said that the *Pointer* rule is really one of Constitutional hearsay. Perhaps the main reason, at common law, for the exclusion of most out-of-court statements of declarants offered at trial for the truth of the assertions therein contained was that this procedure robbed the litigant of his opportunity to test the accuracy of those statements by cross-examining their makers. So also, did the Court in *Pointer* note that "a major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him." 380 U.S. at 406-07, 85 S. Ct. at 1069. This statement, as well as the hearsay evidence rationale, share at least two common, and in the present case extremely persuasive, requirements. In order to fall within either the *Pointer* or the common law hearsay prohibition the out-of-court statement must be both one whose truth cannot be adequately tested and one used in lieu of some witness. The evidence here challenged suffers from neither of these defects. Not only was the truth of both confessions expressly acknowledged by the very man against whom they were used at trial, but also, since Cheeks chose to acknowledge this truth as part of his own admissible confession it cannot be said that the accomplices' statements were used *in place of witnesses* against the accused. These confessions were used as part of Cheeks' own admission of guilt, their contents having been announced to the jury simply to elucidate precisely what it was that appellant himself declared to be accurate accounts of the crime. Cheeks

was no more denied the right to cross-examine his accusers than a man could be denied the right to cross-examine himself.

Moreover, the decision we reach today finds support in both previous state cases and eminent treatises on the law of evidence. Wigmore declares that "[i]f a party *expressly states* that a certain piece of testimony given by another person is correct, there can be no question that it becomes his statement by adoption, and is receivable as his admission." Wigmore, Evidence, §1075 at p. 108 (3d ed. 1940). (Emphasis in original.) Similar language also appears in McCormick, Evidence, §246 at p. 525 (1954): "One may expressly adopt another's statement as his own. That is an explicit admission like any other and is to be classed as an express admission." The reasons underlying such statements, reasons in complete harmony with much of the logic in *Pointer,* are perhaps best stated in an able opinion by Mr. Justice KEPHART (later Chief Justice) written almost thirty years before *Pointer* was decided. In *Commonwealth v. Oreszak,* 328 Pa. 65, 195 Atl. 45 (1937), defendant acknowledged the truth of several statements made by his accomplices by signing the statements himself. This Court sustained the admission of the accomplices' confessions *as admissions of the defendant,* and in so doing made some significant observations which we quote with approval: "If he [the defendant] is absent when the statement [of his accomplice] or a portion of it is made, it nevertheless becomes his statement if, knowing its contents, he voluntarily assents to it. If at the time the statement is submitted, he contradicts or denies any part of it, to that extent the joint statement, or any implication arising from the denial, is hearsay and cannot be offered against him. Its evidentiary value is limited to the statements admitted by him to be true and those he contributed. . . .

. "This statement [the one used against defendant] and its effect as evidence were considered by this Court in Com. v. Rose, supra. [Rose was another of Oreszak's accomplices who had been previously tried.] In that case its admission against Rose was upheld. Defendant strongly objects to the statement as hearsay, and contends that it contains questions and answers not admissible in a criminal trial. In the Rose case, we said at p. 223: 'Appellant mistakes the purpose of the offer of this statement by the Commonwealth. It was not introduced as the testimony of his accomplices, thereby depriving him of the right of cross-examination, but it was offered as a confession by him in so far as he admitted the facts stated in his presence by the other participants in the crime . . . .' " 328 Pa. at 68-69, 195 Atl. at 47-48.[4]

*Oreszak* has been cited with approval in subsequent cases. See, e.g., *Commonwealth v. Bolish,* 381 Pa. 500, 523, 113 A. 2d 464, 476 (1955) ; *Commonwealth v. Turner,* 358 Pa. 350, 368, 58 A. 2d 61, 70 (1948), rev'd on other grounds, 338 U.S. 62, 69 S. Ct. 1352 (1949).[5]

---

[4] Although in the *Rose* case, quoted above, the defendant actually heard the confessions of his accomplices before they were reduced to writing and signed by defendant, whereas in *Oreszak* and the present case, the defendant was merely shown the completed confessions, both the *Oreszak* court and this Court today see no reason to distinguish *Rose* on that ground. So long as defendant, while fully aware of the *contents* of his accomplices' confessions, expressly acknowledges their truth, this is sufficient to allow the confessions to be used as the defendant's own admissions.

[5] Both *Bolish* and *Turner,* while affirming the proposition that an *express* admission of the truth of another's confession can be used against the man making such admission, also hold that the defendant's *silence* in the face of an accusing statement may be used by the Commonwealth as evidence of guilt. It is therefore important to note that by citing these cases we, of course, are *not* breathing any new life into the doctrine of tacit admissions—a doctrine expressly rejected by this Court in *Commonwealth v.*

102

Moreover, even at the time *Oreszak* was decided, Pennsylvania law had long required that an accused be given the right to cross-examine witnesses used against him.[6]

We therefore see no need to disturb the finding of the court below that appellant's constitutional rights were not infringed when the statements of Smith, Dyson, and Baird were used at his trial. The order of the Court of Oyer and Terminer of Philadelphia County, dismissing appellant's petition under the Post Conviction Hearing Act, is affirmed.

Mr. Justice JONES concurs in the result.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

*Dravecz*, 424 Pa. 582, 227 A. 2d 904 (1967). The evil inherent in a tacit admission—that a man's Fifth Amendment right to remain silent and not to be a witness against himself is destroyed when his silence is used as evidence—is, naturally an evil *not* present when the defendant voluntarily and expressly admits the truth of an accusatory statement.

[6] See *Commonwealth v. Zorambo*, 205 Pa. 109, 54 Atl. 716 (1903). As early as 1865 the Supreme Court of Pennsylvania had acknowledged the right of a man to confront his accusers and cross-examine them. See *Howser v. Commonwealth*, 51 Pa. 332 (1866). However, the factual situation in *Howser* giving rise to this broad principle of law is certainly one that we do not think could withstand a constitutional challenge today. For it was there held, inter alia, that a man could be called from the jury box to appear as a witness against the defendant.