THE STATE OF OHIO, APPELLEE, v. POOLE, APPELLANT.
(Two cases.)

[Cite as State v. Poole (1976), 50 Ohio App. 2d 204.]

(Nos. 8176 and 8177—Decided November 24, 1976.)

*Mr. Stephan M. Gabalac,* prosecuting attorney, and *Mr. Frederic L. Zuch,* for appellee.

*Mr. Duard D. Bradshaw,* for appellant.

DOYLE, J. Defendant Tobias Quinn Poole appeals from judgments of conviction for the crimes of aggravated burglary, uttering (R. C. 2913.31) and probation violation. Defendant's counsel argued and briefed these cases jointly and we, therefore, consider them likewise.

Defendant had been indicted by a Summit County Grand Jury which charged that he did "by force, stealth or deception trespass in 275 W. Center Street, Akron, Ohio, an occupied structure, as defined in Section 2909.01 of the Revised Code * * * with purpose to commit therein, the offense of theft, in violation of R. C. 2913.02 * * * said occupied structure is the permanent or temporary habitation of Hilda Feldhaus, in which at the time said Hilda

Feldhaus was present * * * in violation of section 2911.11 (A) (3) of the Ohio Revised Code."

Evidence produced at the trial reveals that on or about February 19, 1976, the defendant and three accomplices, Robinson, Higgins and Evans, looking for a place to burglarize, toured the streets of Akron in Poole's car. They settled on Hilda Feldhaus' home at 275 West Center Street and two of them entered the residence by breaking out a window. Poole stayed with his car which was later used as a "get away" when his accomplices were scared away from the burglary, seemingly because of the occupant's presence.

The evidence establishing these facts was, in most part, obtained from the confessions of Higgins and Robinson, following their arrest.

On March 13, 1976, defendant was arrested for his participation in the burglary. The following day he was interrogated by a member of the police department following a full instruction with regard to his so-called "Miranda Rights." At first, defendant denied participation in the burglary, but later agreed with the police to hear taped statements of the confessions of Robinson and Higgins which involved him in the burglary. Upon hearing the confessions, Poole said: "What they said is true but I would like to talk to an attorney before giving you a recorded statement." At this point, the questioning stopped.

It further appears that prior to trial the defendant requested that he be given a polygraph test. He was accommodated. He took the witness stand in his own behalf and denied his participation in the crime. He also presented a defense of alibi. He testified that upon hearing the confessions of Robinson and Higgins, he did not say "What they said is true."

At the conclusion of the jury trial, the defendant was found guilty of aggravated burglary and was duly sentenced.

The accused has appealed to this court from the judgment entered against him and presents three assignments of error.

*Assignment of Error I*

"Where the trial court permits a police officer to testify as to the contents of a recorded confession obtained from an alleged accomplice, out of the presence of the defendant, and where said recording and accomplice are available to the prosecutor, said testimony is hearsay and its admissibility is error."

The record of the trial establishes two accomplices of the accused made confessions to the police of their participation in the burglary. The confessions were taped. They related in detail the defendant's involvement in the crime. The defendant, after hearing the taped confessions, acknowledged the truthfulness of the statements of his accomplices as contained therein. He then asked for a lawyer.

We find no error in the admission in evidence of the tapes under the circumstances here. The deletion of certain portions of the tapes were indeed beneficial to the defendant. The main thrust of defendant's claim of error relates to whether the confessions were hearsay. To this point we now direct attention.

The law appears to be fairly well established that where it is shown a party clearly and unambiguously agrees to and adopts the statements of another, the statements to which he agrees are admissible in evidence against him. Where a defendant acknowledges the statements of an accomplice, the acknowledged statement becomes his own confession by ratification or adoption. The statement of the accomplice is not admitted in evidence as hearsay of the accomplice, but is admitted in evidence as a voluntary confession of the defendant through the medium of his ratification. No confrontation issue is presented here since the ratified statement is not hearsay evidence. See 2 Jones on Evidence 476, Section 13:28 (6th ed. Gard. rev. 1972); 4 Wigmore on Evidence 148, Section 1075 (4th ed. Chadbourne rev. 1972). Compare, *Commonwealth* v. *Cheeks* (1968), 429 Pa. 89, 239 A. 2d 793; *Commonwealth* v. *Bethea* (1969), 214 Pa. 253, 251 A. 2d 727. Compare, also, *State* v. *Swiger* (1966), 5 Ohio St. 2d 151, 160, and *Vecchio* v. *State* (1921), 15 Ohio App. 153.

We find no error of a prejudicial character in the first assignment of error.

## Assignment of Error 2

"Where an expert witness is allowed to testify only because of a stipulation and waiver of the parties, to matters which ordinarily do not constitute relevant and material evidence within the meaning of Section 2945.03, Ohio Revised Code, it is error for the trial court to refuse to charge the jury that said testimony is ordinarily inadmissible, and further, it is error to have allowed said testimony in spite of the stipulation and waiver."

This claim of error is not well taken. It is entirely inconsistent with the position taken by the defendant at the time of the trial and cannot be raised here for the first time. Before trial, the defendant signed a polygraph examination stipulation and waiver in which he requested that he be submitted to a polygraph examination. He stipulated that the person selected to administer the test was an expert in the field. He expressly waived any rights he may have had in this respect. He knew that he had a right to object to and to prevent the polygraph results from being introduced into the evidence yet he specifically waived this right and consented to the admission of the evidence. His complete waiver of rights, which might have arisen from the use of the tests, were specifically waived and, as stated above, cannot be raised here for the first time as a ground for prejudicial error.

This assignment of error is overruled.

## Assignment of Error 3

"The jury verdict was contrary to the manifest weight of the evidence."

The record reflects sufficient evidence for a jury to reasonably find the guilt of the appellant beyond a reasonable doubt. We have found no prejudicial error in the trial and the court's instructions to the jury were adequate. We quote from paragraph two of the syllabus of *State* v. *DeHass* (1967), 10 Ohio St. 2d 230:

"A reviewing court may not reverse a judgment of conviction in a criminal case in a trial court, where the rec-

ord shows that a verdict of guilty was returned by a jury on sufficient evidence and where no prejudicial error occurred in the actual trial of the case or in the instructions given the jury by the court.''

We find no error of a prejudicial character under this assignment.

*Judgment affirmed.*

VICTOR, P.J., and HUNSICKER, J., concur.

HUNSICKER and DOYLE, JJ., retired, were assigned to active duty under authority of Section 6(C), Article IV, Constitution.