412 A.2d 886

**COMMONWEALTH of Pennsylvania**

**v.**

**Jon KENNEDY, Appellant.**

Superior Court of Pennsylvania.

Argued July 17, 1979.

Filed Oct. 19, 1979.

Reargument Denied Jan. 11, 1980.

Stanley M. Shingles, Philadelphia, for appellant.

Victor M. Fortuno, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN, JJ.*

HONEYMAN, Judge:

After a lengthy trial by jury, the appellant was found guilty of voluntary manslaughter, burglary, conspiracy and possession of instrument of crime. Post trial motions were denied and sentence of four years to ten years was imposed for the voluntary manslaughter and concurrent terms on the non-homicide charges. From judgments of sentence these appeals were taken. In support thereof, appellant raises twenty-four bases therefor. For the purposes of this opinion we will address ourselves to only nine, because the others appear to be either frivolous, harmless error, or to have been waived.

On November 1, 1975, at noon time, appellant and Robert Williams, went to appellant's second floor apartment at 2820 North Broad Street, Philadelphia. They discovered that the

* Justice HENRY X. O'BRIEN of the Supreme Court of Pennsylvania, and Judge ROBERT W. HONEYMAN of the Court of Common Pleas of Montgomery County, Pennsylvania are sitting by designation.

electricity therein had been turned off. Shirley Jones, baby-sitter for appellant's children had also come to the apartment with them. Appellant went down to the first floor apartment of his landlord, Rinaldo Capellupo, aged 70, and requested him to turn on the current. Appellant returned to the apartment and found that the lights were on and sent Williams down to the landlord to so inform him. Thereafter, Williams got into an argument with Capellupo in the first floor hallway and struck him causing him to bleed. Appellant then went down and joined in the fight, wherein appellant kicked Capellupo three or four times and struck him with a metal smoking stand at least once. In the course of the fight, the three moved inside Capellupo's apartment. Capellupo was seated therein when the police arrived. Appellant and Williams left the premises before the police came. Capellupo suffered a fractured skull, fractured ribs, a fractured chest bone and a burst right lung. He was removed to Temple Hospital by the police. Shortly after his arrival a police detective asked him if he had been robbed and if it was by a tenant. To both questions Capellupo nodded affirmatively. He did not die until November 15, 1975.

First, appellant asserts that the trial judge's instructions to the jury on causation were fatally defective; that the evidence was insufficient to support a finding of death being caused by the conduct of appellant; and that the chain of causation between the conduct of the appellant and death was broken as a matter of law. To dispose of these contentions it is necessary to state some additional facts. In the course of ministering to the needs of Capellupo at the hospital, he was placed on a respirator, and was given blood transfusions. On November 12, 1975, he had experienced either a cardiac or pulmonary arrest following a malfunction in the respirator. On November 14, 1975 he suffered an adverse reaction to a blood transfusion. The following day, he died. The medical examiner, a pathologist, testified for the Commonwealth that, in his opinion, Capellupo's death was due to multiple impact injuries to the head and chest.

A cardiologist witness for the appellant testified that, but for the events of the 12th and the 14th, in his opinion, Capellupo would have survived the injuries he sustained at the hands of appellant and Williams on the first.

Appellant complains that the instructions by the trial judge were factually defective because he utilized, as illustrations, two Pennsylvania Supreme Court cases which concerned questions of causation. He argues that by doing this, the trial judge effectively took away from the jury the issue of causation. We do not agree. There is nothing improper in the use of illustrations so long as they are not misleading. Furthermore, the trial judge clearly left the issue of causation in the instant case for resolution by the jury.

Appellant's conduct must have been a direct and substantial factor in causing the death of the victim. See *Com. v. Stafford*, 451 Pa. 95, 301 A.2d 600 (1973). Causation is an issue of fact for the jury to decide. Where there is a conflict in opinion evidence, as here, the jury was free to accept the opinion of the Commonwealth's pathologist and reject the opinion of the appellant's medical expert. See *Com. v. Hicks*, 466 Pa. 499, 353 A.2d 803 (1976). Since the beating of the victim by appellant and Williams started in motion a chain of events which culminated in death, it was perfectly proper for the jury to conclude beyond a reasonable doubt that the wounds received in the beating were the legal cause of death, despite the events that took place in the hospital. See *Com. v. Green*, 477 Pa. 170, 383 A.2d 877 (1978). Therefore, the finding of the jury on causation should not be disturbed. Neither was the chain of causation broken by reason of the events in the hospital prior to death, because it was the results of the beating by appellant and Williams that necessitated the victim being placed on the respirator and being given blood transfusions. If something went awry in the treatment procedures, the appellant cannot seize upon that to escape the consequences of his criminal conduct.

■ Appellant states that the requisite intent for the crime of burglary was not proven. We agree. The fracas, which commenced outside the door of the victim's apartment, spilled over into the apartment. It is extremely doubtful that, as appellant's body crossed the threshold, he formed any criminal intent. The Commonwealth's argument that his criminal intent was to continue his assaultive behavior after he got into the apartment is fallacious. Therefore, the judgment of sentence in the burglary charge should be arrested.

■ Similarly, there is merit to the position of the appellant with respect to the charge of conspiracy. The evidence fails to establish any agreement between appellant and Williams that could satisfy the requirements of the law with respect to the charge of criminal conspiracy. Their assaultive conduct toward Capellupo certainly appears to have been independently spontaneous. The mere happening of a crime in which two or more people participate does not of itself establish a conspiracy between or among them. There must be proof of an unlawful agreement, participation therein and knowledge of the agreement. See *Com. v. Holman*, 237 Pa.Super. 291, 352 A.2d 159 (1975). The evidence must establish that the accused did something other than participate in the offense which is the object of the alleged conspiracy. See *Com. v. Neff*, 407 Pa. 1, 179 A.2d 630 (1962). Therefore, the judgment of sentence on the criminal conspiracy charge should be arrested.

■ Appellant says that an ash tray or a smoking stand cannot be an instrument of crime within the contemplation of Section 907 of the Crimes Code. (18 Pa.C.S.A. 907). We agree. A smoking stand is not an item specially made or adapted for criminal use. Neither is it something commonly used for criminal purposes. For similar conclusions, see *Com. v. Rios*, 246 Pa.Super. 479, 371 A.2d 937 (1976) with respect to a hammer, and *Com. v. Morgan*, 265 Pa.Super. 225, 401 A.2d 1182 (1979) with respect to wire cutters. Therefore, the judgment of sentence on this charge should be arrested.

■ Appellant contends that it was error for the trial judge to refuse to charge on aggravated assault as a lesser included offense of murder and/or voluntary manslaughter. At first blush, it would appear that this is meritorious. In *Com. v. Wilds*, 240 Pa.Super. 278, 362 A.2d 273 (1976) the court said, 240 Pa.Super. at 287 and 288, 362 A.2d at 278:

> "It is well settled that upon an indictment for a particular crime, the defendant may be convicted of a lesser offense included within it. . . . It is also clear that an offense is a lesser included offense if each and every element of the lesser offense is necessarily an element of the greater. . . . (If) it is rational for the jury to render a verdict of not guilty of the greater offense but guilty of the lesser, it is incumbent upon the judge to instruct the jury on the law related to the constituent offense if so requested by counsel. . . ."

Here, the cause of Capellupo's death was in issue. Therefore, the jury would have been free to resolve that issue in favor of the appellant. Had they done so, the evidence still would have supported a finding of all of the essential elements of the crime of aggravated assault. On that rationale we would conclude that the refusal of the trial judge to charge on aggravated assault was error, except for the holding in *Com. v. Comber*, 374 Pa. 570, 97 A.2d 343 (1953). Therein, the Supreme Court of Pennsylvania said that this type of situation constitutes an exception to the principle that an accused may be convicted of a lesser offense included within the greater offense. Specifically, the Court held that a jury, in a murder case, is not permitted to return a verdict for any degree of assault or battery because of the likelihood that the jury might be confused by the multiplicity of instructions upon various charges. This exception was most recently recognized by this Court in *Com. v. Nace*, 222 Pa.Super. 329, 295 A.2d 87 (1972). Therefore, *Comber* controls on this issue and not *Wilds*.

■ Next, appellant asserts that it was error for the prosecutor to elicit the contents of a statement obtained

from Williams in the testimony at trial of the witness who had interrogated the appellant. Appellant further says that this error was compounded by permitting the prosecutor to read the entire statement from Williams into evidence in rebuttal. This aspect of the matter is either governed by *Com. v. Ransom*, 446 Pa. 457, 288 A.2d 762 (1972) or *Com. v. Cheeks*, 429 Pa. 89, 239 A.2d 793 (1968), or both of them. In *Cheeks*, use of a co-defendant's statement in such a situation was permitted because the accused unequivocally acknowledged the verity of the content of such statement with one exception. That was the case herein, because appellant accepted everything as true that the police officer told him Williams had said with the exception of the robbery aspect of the matter. Therefore, it would appear that under *Cheeks* the conduct of the prosecutor in the first instance was permissible. However, when the prosecutor then put the entire statement by Williams into evidence, the proscription enunciated in *Ransom* came into play, and error was committed, because appellant was thereby denied his constitutionally guaranteed right of confrontation. It is significant to note that the Supreme Court of Pennsylvania in *Ransom*, made absolutely no reference to *Cheeks*. Neither has it addressed itself, in any subsequent opinion, to a delineation of the line of distinction between the rationale of each of the two cases. Therefore, we conclude that it was error for the jury to hear the entire Williams statement, but probably not error for it to simply hear the portion with which the police confronted appellant and which was adopted by him as part of his own admissions.

■ Appellant complains that it was error to permit the prosecutor to cross examine him based upon appellant's testimony at the suppression hearing. At trial, in certain particulars, appellant testified in a manner contrary to his testimony at the suppression hearing. The prosecutor confronted him with such discrepancies. This was not error. See *Com. v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977) and *Com. v. Ravenell*, 448 Pa. 162, 292 A.2d 365 (1972).

■ The next question is whether or not it was error for the trial judge to have failed to charge on involuntary manslaughter. The Commonwealth had drawn and obtained a three count indictment charging murder, voluntary manslaughter and involuntary manslaughter. Both prior to jury selection and prior to commencement of trial after jury selection was completed, the prosecutor stated his intention not to proceed on the involuntary manslaughter count. Appellant's counsel objected to this, whereupon the trial judge instructed him to "come up with some law . . ." on the point. Thereafter, the matter was not pursued. Appellant's counsel neither filed a written request for such instruction, nor did he interpose any objection to the failure of the trial judge to so charge before the jury retired to deliberate. Therefore, this issue was waived by appellant. See *Com. v. Jarvis*, 482 Pa. 598, 394 A.2d 483 (1978).

Finally, appellant challenges the ruling of the suppression judge with respect to three inculpatory statements obtained from him by the police. At trial, appellant denied making any of these statements. Appellant had been arrested and brought to the Police Administration Building at 7:00 p. m. November 1, 1975. The first statement was made at 8:51 p. m. In the meanwhile Williams had been apprehended and questioned as a result of the first statement. Appellant was then confronted with the content of Williams' statement, whereupon appellant made his second statement at 12:57 a. m. on November 2nd. He was arraigned at 2:00 p. m. on November 2nd. Of course, at that point, only the non-homicide charges were charged against appellant. Thereafter, following Capellupo's death, on November 18th appellant was taken from prison to the Police Administration Building and within two hours thereof he made the third statement.

■ First, appellant says there was a lack of probable cause for his arrest in the first instance. The suppression judge found to the contrary. We are bound to accept such a finding of fact unless it is wholly lacking support in the evidence. See *Com. v. Willis*, 483 Pa. 21, 394 A.2d 519 (1978). Clearly, the facts available to the police at the time of

appellant's arrest were sufficient to justify a man of reasonable caution in the belief that a crime had been committed and that the appellant was the probable perpetrator thereof, or one of them. See *Com. v. Jackson,* 459 Pa. 669, 331 A.2d 189 (1975).

Next, appellant asserts that the statements were involuntarily obtained, particularly the first one. We must look at the totality of the circumstances to determine involuntariness. See *Com. v. Tucker,* 461 Pa. 191, 335 A.2d 704 (1975). We find nothing to reflect against the voluntariness of the statements in any sense other than that which might raise a question because of delay in arraignment. In this latter respect, appellant contends that the second and third statements were the product of pre-arraignment delay. Apparently even he concedes that there was no nexus between pre-arraignment delay and the first statement, since it came less than two hours after his arrest. With respect to the second statement, that was, in large measure, an extension of the first statement. The time interval between the two was largely consumed by the apprehension and questioning of Williams. We see nothing rendering the second statement inadmissible. See *Com. v. Bogan,* 482 Pa. 151, 393 A.2d 424 (1978). The third statement came only two hours after the appellant was confronted with the charge of murder, and long after his arraignment on the non-homicide charges. Such a period of time is well within the allowable parameters under any decisions of our courts in this area. Therefore, there could be no nexus between any delay in his arraignment for the murder charge and the third statement. All of the foregoing would be governed by *Com. v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972) and the three-pronged test of *Com. v. Williams,* 455 Pa. 569, 319 A.2d 419 (1974) and their progeny. Obviously because of the time when all of these events transpired, the "six hour rule" enunciated in *Com. v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977) is inapplicable. There was no error in the refusal to suppress any or all of the three inculpatory statements given by appellant.

218

Judgments of sentence reversed. As to the judgments of sentence on the charges of burglary, conspiracy and possession of an instrument of crime, they are arrested. As to the judgment of sentence on voluntary manslaughter, a new trial is ordered.

O'BRIEN, J., concurs in the result.