387 F.2d 597
 UNITED STATES of America ex rel. Ralph STAINO, Jr., H-4329
v.
Joseph R. BRIERLY, Superintendent, State Correctional
Institution, Philadelphia, Pennsylvania 19130, Appellant.
 No. 16763.
 United States Court of Appeals Third Circuit.
 Argued Nov. 22, 1967.
Decided Dec. 29, 1967.
 
 William D. Hutchinson, Asst. Dist. Atty., County of Schuylkill, Pottsville, Pa. (R. B. Russell, Dist. Atty., Pottsville, Pa., on the brief), for appellant.
 John Patrick Walsh, Philadelphia, Pa. (David N. Savitt, Philadelphia, Pa., on the brief), for appellee.
 Before HASTIE, FREEDMAN and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 HASTIE, Circuit Judge.
 
 
 1
 On this appeal by the Commonwealth of Pennsylvania from an order of a district court granting habeas corpus to Ralph Staino, a state prisoner serving a term for burglary and larceny, we consider whether the procedures, including the use of a so-called 'tacit admission', employed by the state in obtaining the conviction deprived Staino of his liberty without dur process of law.
 
 
 2
 The crime charged was a burglary in Pottsville, Schuylkill County, Pennsylvania. Staino lived and worked in Philadelphia. By prearrangement of the police, Staino was arrested about 1 o'clock Sunday morning at the Philadelphia night club where he worked. He was then placed in a police car and carried some 50 miles to Reading Barracks, a state police installation in Berks County. There at about 4 A.M. he was 'interrogated' by a high ranking Philadelphia police officer.
 
 
 3
 The 'interrogation' was brief, beginning with a recital to the prisoner that he and alleged confederates were under arrest for the Pottsville burglary, that he did not have to make a statement and that, if he did, anything he said would be used against him at his trial. Immediately after this admonition, the police officer addressed an accusatory statement to Staino describing the manner in which the burglary was accomplished and charging him with being the owner and driver of the car which carried the thieves to and from the scene of the crime and the recipient of part of the stolen money. This recital was a paraphrase of a confession the police had obtained from an admitted participant in the crime. As he listened to this brief purported description of the crime, Staino repeatedly said, 'I have nothing to say'. This ended the 'interrogation'.
 
 
 4
 The officers then put Staino back in their car and drove to Schuylkill County, the scene of the crime, arriving there before 6 o'clock Sunday morning. Routine procedures followed and Staino was lodged in the Schuylkill County jail at Pottsville.
 
 
 5
 Sunday evening in the Pottsville jail there occurred a substantial repetition of the 'interrogation' which had taken place early that morning in Berks County. However, on this second occasion, the interrogating officer read to Staino the actual text of the incriminating confession as made by his alleged confederate. Again Staino refused to comment upon the accusatory statement. This 'interrogation' lasted no more than 5 minutes.
 
 
 6
 At Staino's trial a substantial part of the evidence against him was testimony of the interrogating officer telling the jury what was said and done during the two short periods of 'interrogation'. In addition, the document which was the confession of the alleged confederate was introduced into evidence and placed before the jury. Thereafter, the trial judge carefully instructed the jury on the theory of 'tacit admission', explaining that the incriminating statement could be considered as probative against Staino only if they should find that an innocent person in Staino's position would have denied the accusation and that Staino's failure to do so reflected consciousness of guilt.
 
 
 7
 Staino's conviction was affirmed by the Superior Court, Commonwealth v. Staino, 1964, 204 Pa.Super. 319, 204 A.2d 664, and the Supreme Court of Pennsylvania refused allocatur. Staino then petitioned the Court of Common Pleas of Schuylkill County for habeas corpus. That court granted him a hearing and denied the petition. On appeal, an evenly divided Superior Court affirmed the denial of habeas corpus. Commonwealth ex rel. Staino v. Cavell, 1966, 207 Pa.Super. 274, 217 A.2d 824. The Supreme Court of Pennsylvania reviewed the controversy and, with two Justices dissenting, sustained the denial of habeas corpus. Commonwealth ex rel. Staino v. Cavell, 1967, 425 Pa. 365, 228 A.2d 647.
 
 
 8
 A reading of the cited opinions shows that the issues now presented on federal habeas corpus were considered by both Pennsylvania appellate courts and decided against the petitioner. Indeed, it is the petitioner's contention that, on the facts as found by the Pennsylvania courts, the legal analysis of the dissenting Pennsylvania judges is sound and establishes the correctness of the petitioner's claim that he has been denied dur process of law. In these circumstances, the constitutional claim is ripe for adjudication on federal habeas corpus.
 
 
 9
 On the present record we find serious unfairness in the obtaining and proving of the prisoner's 'tacit admissions'.
 
 
 10
 We begin with the relevant, though not necessarily decisive observation, that one's normal response to hearing derogatory statements about himself is substantially inhibited by the very fact that he is under arrest on a criminal charge and is being questioned by police officers in an obvious effort to substantiate that charge. On such an occasion a prisoner is likely to be wary and cautious. The circumstances simply are not such as to evoke a spontaneous response to an accusatory statement. Yet, the sole justification for the tacit admission doctrine is the psychological premise that, normally, an innocent person confronted with a charge of wrongdoing will be strongly impelled to utter a spontaneous denial. Thus, it is difficult at best to justify the application of the tacit admission concept to a prisoner's response when confronted by the police with a statement accusing him of complicity in the very crime for which he has been arrested. And difficulty of justification becomes impossibility when circumstances peculiar to this case are considered.
 
 
 11
 The undisputed evidence compels the conclusion that the two brief 'interrogations' of Staino-- before day Sunday morning at Reading and Sunday night at Pottsville-- were intended not to obtain any testimonial utterance from the prisoner but solely to confront him with accusatory statements under circumstances calculated to discourage him from affirmation or denial. When the questioning officer prefaced his paraphrase, and on the second occasion his reading, of an alleged confederate's confession with a statement to the prisoner that he need not answer and that whatever he might say would be used against him, a normally proper preface to a bona fide request for information was being used as an invitation or an inducement to silence, with the undisclosed purpose of using that silence as a manifestation of consciousness of guilt. 'While this warning may have protected the accused from affirmative admissions, it afforded no protection against a tacit admission. It merely served as a strategem whereby the accused was tricked into incriminating himself by remaining silent.' Hoffman, J., dissenting in Commonwealth ex rel. Staino v. Cavell, 1966, 207 Pa.Super. 274, 288-289, 217 A.2d 824, 831. Similar reasoning led Justice Roberts, dissenting from the refusal of the Supreme Court of Pennsylvania to grant Staino habeas corpus, to say that 'Staino's so-called tacit admission was the result of police tactics which amounted to 'an indefensible sort of entrapment". Commonwealth ex rel. Staino v. Cavell, 1966, 425 Pa. 365, 379, 228 A.2d 647, 654.
 
 
 12
 We are reinforced in this view by the additional fact that the police were at pains to keep Staino incommunicado until they could induce his 'tacit admissions'. The unusual hour of arrest, one o'clock Sunday morning, followed by the unusual itinerary during the immediately ensuing hours must be viewed as a calculated departure from normal procedure. It was the statutory duty of the Philadelphia arresting officers either to take the arrested person forthwith to the county where the crime was alleged to have been committed or to hold him temporarily in Philadelphia for prompt hearing before a judicial officer. 19 P.S. 2, 3. The pre-dawn journey to and stopover in Berks County, a place wholly unrelated to the alleged crime, could have had no other purpose than to make certain that there would be no interference by counsel or friends until after the planned 'interrogation'. The record shows that Staino's brother had retained an attorney who, throughout the day of the arrest, tried unsuccessfully to locate the prisoner. We agree with the conclusion of Judge Hoffman, speaking for himself and two colleagues in the Superior Court, that the 'importance of counsel at this state of the proceedings cannot be disputed * * *. By denying appellant this right, and advising him to remain silent, however, the police succeeded in transforming appellant's silence into evidence of guilt'. Commonwealth ex rel. Staino v. Cavell, 207 Pa.Super. 274, 289-290, 217 A.2d 824, 831.
 
 
 13
 There was yet another element of unfairness in the method of proof of the 'tacit admission'. The incriminating document which was the confession of an alleged confederate was formally admitted into evidence at Staino's trial and placed before the jury. Judge Hoffman's dissent, to which we already have alluded, points out that though the trial court explained to the jury that this document was admitted only to show what it was that Staino did not deny, the practical effect was likely to be the use of the transcribed testimonial statement of an absent declarant as in itself constituting probative evidence against the accused despite his constitutional right to be confronted by any witness against him. See Commonwealth ex rel. Staino v. Cavell, 1966, 207 Pa.Super. 274, 290-292, 217 A.2d 824, 832-833. While technically, in the light of the charge limiting the use of the incriminating confession, it is arguable that the procedure in this case did not amount to a denial of the constitutional right of confrontation, certainly much of the unfairness inherent in the admission of an incriminating statement by an absent witness is present here. The risk is real that jurors, even though not convinced that the conduct of the accused when confronted by the statement amounted to an admission, were, nevertheless greatly influenced by their reading of a written confession of an admitted participant in the crime asserting that the accused was one of his confederates. In this connection it is noteworthy that the maker of the confession had later repudiated it, a fact which could not have been known to this jury.
 
 
 14
 In our judgment, the cumulative significance of all of these circumstances and considerations is to disclose essential unfairness in the total process which led to the conviction of the accused. Here, as in United States ex rel. Smith v. Brierly, 3 Cir., 384 F.2d 992, decided November 9, 1967, we do not hold that the Supreme Court's ruling that the 14th Amendment comprehends the privilege against self-incrimination, Malloy v. Hogan, 1964,378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, is to be applied retrospectively. But we do hold, as we did in the Smith case, that the particular circumstances attending the obtaining proof and use of 'tacit admissions' were such as to make a conviction obtained in that way essentially unfair and, therefore, violative of the 14th Amendment.
 
 
 15
 The judgment granting habeas corpus, without prejudice to the right of the Commonwealth to retry Staino, will be affirmed.