**UNITED STATES of America ex rel. Robert STOKES**

v.

**Alfred T. RUNDLE, Superintendent.**

Misc. No. 4055.

United States District Court
E. D. Pennsylvania.

Dec. 2, 1968.

Goncer M. Krestal, Philadelphia, Pa., for relator.

Vram Nedurian, Jr., Asst. Dist. Atty., Media, Pa., for respondent.

## OPINION

LUONGO, District Judge.

■ On October 9, 1962 relator, Robert E. Stokes, entered a plea of guilty to "murder in the second degree"[1] and was sentenced by the Quarter Sessions Court of Delaware County to imprisonment for a term of 7½ to 15 years. In this habeas corpus petition, Stokes attacks that plea on the ground that it was induced by a statement obtained from him by the police without the constitutionally required warnings as to the right to remain silent and the right to be represented by counsel. Stokes did not appeal from the sentence and judgment of conviction, but he has presented these claims to the state courts under the Pennsylvania Post Conviction Hearing Act, 19 P.S. § 1180–1 (Supp.1967).[2] He has, therefore, exhausted state remedies. United States ex rel. Staino v. Brierly, 387 F.2d 597 (3d Cir. 1967).

■ The complained of statement was made and the guilty plea was entered before Escobedo v. Illiniois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1966) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R. 3d 974 (1966) were decided. Since the *Escobedo* and *Miranda* rulings are not applicable retrospectively (Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966)), if there was a failure to warn in this case it would not automatically invalidate the statement, but the lack of warning would be an element to be considered in determining whether the statement was given voluntarily. Davis v. North Carolina, 384 U. S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Haynes v. Washington, 373 U. S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963).

An examination of the state record failed to disclose sufficient facts upon which to make an enlightened appraisal of relator's claims. There is contained in the record of the proceedings on the guilty plea, the text of a signed statement obtained from Stokes by the Delaware County district attorney. There is no indication in that statement that any warning was given until after nine pages of questions by the district attorney and answers (many of them incriminating)

---

1. The plea evoked this comment by the Pennsylvania Supreme Court: "Since such a plea is unknown to Pennsylvania law, this was contrary to proper practice. Commonwealth ex rel. Kerekes v. Maroney, 423 Pa. 337, 340–341, 223 A.2d 699, 701 (1966). At the same time we have held that the defendant is not prejudiced thereby and may not subsequently attack the court's action. Ibid." Commonwealth v. Stokes, 426 Pa. 265, 267, 232 A.2d 193, 194 (1967).

2. The sentencing judge initially dismissed Stokes' post conviction petition on the ground that Stokes had not alleged abridgement of any specific constitutional right. The Supreme Court of Pennsylvania reversed and remanded to allow Stokes the opportunity to clarify his petition. Commonwealth v. Stokes, 426 Pa. 265, 232 A.2d 193 (1967). Thereafter the sentencing judge conducted a "hearing" at which no evidence was presented and which consisted of a colloquy between Stokes and the court in which Stokes tried in vain to impress upon the court his claim of a specific constitutional infringement. The petition was again dismissed and this second dismissal was affirmed by the Pennsylvania Supreme Court. Commonwealth v. Stokes, 430 Pa. 440, 244 A.2d 30 (1968).

by Stokes. None of the other evidence at the plea hearing threw any light on whether warnings had been given before the statement was obtained. Because the state record was inadequate, an evidentiary hearing was held in this court. From the evidence adduced before me and from the state records, I conclude that Stokes' statements were freely and voluntarily made and that his guilty plea was not unlawfully induced.

The facts are these:

On March 9, 1962 the body of William Leake, an apparent homicide victim, was found in a rural area of Delaware County. Police investigation revealed that Stokes had been seen in the immediate vicinity of the place where the body was discovered at about the estimated time of Leake's death; that several persons had seen Stokes and Leake together at a drug store and at bars in the general area within hours of the homicide; that Stokes had expressed his intention to drive that night with Leake to Chester, Pennsylvania; and that Stokes was the last person seen with Leake while the latter was alive. The police learned also that Stokes was absent without leave from the Marines, and that, although he had been expected for dinner at the home of a member of his family on the evening following the discovery of Leake's body, he had failed to show up there. After obtaining all that information, the police broadcast an alarm for Stokes. In the early morning of March 11, 1962, Stokes was apprehended in a hotel in Wilkes-Barre, Pennsylvania. After a few hours in the custody of the Wilkes-Barre police, relator was taken to the Pennsylvania State Police barracks in Wyoming County, where he remained for about eight hours during which time he was questioned at intervals[3] by Lt. Rocco Urella. The questions and answers were taperecorded. The recording was later reduced to typewritten form but was not signed by

Stokes. Thereafter, Stokes was taken to the office of the district attorney of Delaware County where he was again questioned. The questions and answers were typewritten and relator signed the statement. This statement was the one introduced in evidence at the time of the guilty plea.

At the hearing before me Stokes testified that the police did not tell him why he was being questioned. He testified that he thought that he had been arrested because he was AWOL from the Marines. He claimed that the police tricked him into giving a statement by questioning him about Leake before informing him of Leake's death. Stokes testified that he was given no warnings of any kind and that when he mentioned the matter of counsel, the police advised him that it was proper and normal procedure for them to obtain a statement before permitting him to see counsel and it was for that reason only that he gave the statement. Relator further testified that when he did employ counsel, counsel advised him that he had no alternative but to plead guilty because of the statement.

Stokes' trial counsel, H. Weston Tomlinson, Esquire, appeared and testified that he had advised Stokes to plead guilty. His advice was based in large measure on the statement Stokes had given to the police. Counsel testified that if the statement had not been given he would have recommended that relator go to trial on a not guilty plea to see what evidence the Commonwealth would be able to produce before deciding to enter a guilty plea. On the subject of warnings, Tomlinson was fairly certain that relator had received some warnings in the signed statement taken by the Delaware County district attorney. He added that he recalled seeing an unsigned statement taken by the state police prior to the time the signed statement was taken by the district attorney,

---

3. Stokes did not complain in his habeas corpus petition or in his testimony that he was in any way mistreated, threat-ened, coerced or promised anything while in the custody of the state police.

and that some warnings were contained in that unsigned statement.

Rocco Urella, formerly Lieutenant of the Pennsylvania State Police and now Chief of Criminal Investigation for Delaware County, testified concerning the investigation of the Leake homicide and the questioning of Stokes. He testified that Stokes was advised at the outset and was aware that he had been arrested because of the assault on Leake and that Stokes knew that Leake was dead before any statement was taken. Urella testified further that Stokes was advised of his right to remain silent and his right to have the services of counsel and that Stokes refused to see either members of his family or counsel. Urella identified the unsigned transcript of the questions and answers as the questioning conducted by him in the state police barracks before Stokes was taken to the office of the Delaware County district attorney. On the very first page of the transcript of that questioning it appears clearly that Stokes acknowledged that he had been well treated; that he was accorded the opportunity to, but did not desire to see anyone; and that he had been warned that the statement could be used against him. That transcript of the proceedings in the state police barracks corroborated Urella's testimony which I found to be entirely credible.[4] This testimony was consistent with that given by the attorney, Tomlinson, although Urella was not in the courtroom while Tomlinson testified and they had not discussed the matter before coming into the courtroom. Urella's independent recollection of the events in question impressed me as being clear and accurate.

When Stokes testified in rebuttal he was much more equivocal. He did not directly disagree with anything that either Tomlinson or Urella had said. He indicated only that he did not remember being given any warnings and that he had never *seen* the unsigned transcript of the questioning at the state police barracks. He also changed his story somewhat to agree with Urella's testimony, that he had been arrested because he had "had the fight with Leake." (N.T. 150, Federal Habeas Hearing).

I am satisfied that Stokes was properly warned before he was questioned by the police and that he knowingly answered their questions out of a desire to make a clean breast of things. I accept former Lt. Urella's testimony as more accurate and reliable than relator's concerning the events which took place at the state police barracks. I do not feel that Stokes at any time deliberately lied to me but I do feel that his recollection of events has been somewhat distorted by his desire to have his situation fit into the recent decisions concerning police questioning. Stokes' recollection is simply not as accurate or reliable as Urella's.

■ I conclude that Stokes was adequately forewarned of his rights before he gave his statements, that the statements were voluntarily given and that his plea of guilty was not induced by any unlawfully obtained statement and the petition for writ of habeas corpus will be denied.

The Court acknowledges with grateful appreciation the services of Goncer M. Krestal, Esquire, who has represented relator at the request of the Court, without compensation.

4. I am mindful of Urella's possible bias both because of his former position as Lieutenant of the Pennsylvania State Police and his present position as Chief of Investigation of Delaware County. Bearing that possible bias in mind, I was nevertheless impressed by the accuracy and credibility of his testimony.