**UNITED STATES of America ex rel. Bernard CHEEKS, H–4596, Appellant,**

**v.**

**Harry RUSSELL, Warden of S. C. I. H. No. 17609.**

United States Court of Appeals, Third Circuit.

Argued April 24, 1969.

Submitted on Briefs Sept. 4, 1969.

Decided March 26, 1970.

John W. Packel, Philadelphia, Pa., for appellant.

Joseph J. Musto, Asst. Dist. Atty. (James D. Crawford, Asst. Dist. Atty., Chief, Appeals Division, Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, FREEDMAN and STAHL,* Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

The appellant Cheeks was convicted of stabbing Jo Henry Howell in the course of a robbery committed on October 11, 1963 in Philadelphia. Howell died seven days later.[1] Cheeks had among his alleged accomplices Beard,[2] Smith and Dyson. These three accomplices were

---

* Judge Stahl heard the argument and participated in the consideration of the appeal but not in the decision which occurred after his death.

1. Cheeks was convicted of first degree felony murder and was sentenced to life imprisonment. His conviction was affirmed by the Supreme Court of Pennsylvania, Commonwealth v. Cheeks, 423 Pa. 67, 223 A.2d 291 (1966). He sought habeas corpus in the court below and was denied relief on the ground that he had not exhausted his state remedies. United States ex rel. Cheeks v. Prasse, 261 F.Supp. 760 (1966). Thereafter he filed a petition for relief in the Court of Oyer & Terminer under the Pennsylvania Post Conviction Hearing Act of January 25, 1966, P.L.(1965) 1580 § 4,

19 P.S. § 1180–4 (Supp.1966), which was denied without an evidentiary hearing. The Supreme Court of Pennsylvania in Commonwealth v. Cheeks, 429 Pa. 89, 239 A.2d 793 (1968), affirmed the judgment of the Court of Oyer & Terminer. A second petition for habeas corpus was then filed in the court below. There is no doubt that Cheeks has now exhausted his state remedies.

2. In Commonwealth v. Cheeks, 429 Pa. 89, 239 A.2d 793 (1968) Beard's name is given as "Baird." In Cheeks' appeal to the Supreme Court of Pennsylvania from the judgment of conviction, his accomplice's name is given as Joseph Beard. An examination of the record shows that the correct name was "Joseph Beard."

taken into custody by the Philadelphia police on or about October 24 and Cheeks and they were questioned. What later transpired and certain legal conclusions based on those operative facts are succinctly set out in the opinion of Mr. Justice Roberts in Commonwealth v. Cheeks, 429 Pa. 89, 97–98, 239 A.2d 793, 797–798 (1968), as follows:

"During the course of appellant's [Checks'] trial, the Commonwealth read into the record a confession given by one Craig Smith who was not called to testify. The confession implicated Cheeks. A similar confession of William Dyson, implicating appellant, was referred to,[3] although not actually read, by a detective whose testimony was used to rebut that of a certain defense witness. The third confession, given by Joseph * * * [Beard], was also used by the Commonwealth. But * * * [Beard] *was* called to the stand, and so the use of his confession cannot support appellant's *Pointer*[4] claim. As for the confessions of Smith and Dyson (two men who were not present at trial), it is clear that their use *would* violate the sixth amendment right of a defendant to confront his accusers, provided these confessions were in fact used in lieu of the two men themselves, and were introduced as the 'testimony' of two witnesses to the crime. However the Commonwealth asserts that these statements were actually introduced *as the statements of the defendant*, on the theory that Cheeks' own confession incorporated the confessions of his three accomplices. We decided in [Cheeks'] direct appeal that his confession was properly introduced. Thus, two issues must be resolved: whether that confession adopts the statements of Smith and Dyson; and if it does so adopt, whether the use of the accomplices' confessions nevertheless runs afoul of the sixth amendment.

"Part of appellant's confession, read into the record [by Detective Seifert], consisted of the following:

" 'Q. You were shown the statements of Craig Stephen Smith, Joseph Baird and William Dyson, are they correct in what they said?

A. Yes, sir, all except Joe Baird's statement that I tried to give him the bloody knife with the pearl handle.[5] That was wrong.

Q. What do you think of Craig Stephen Smith's statement?

A. It is true.' "[6, 7]

---

3. Literally there was only one non-testifying declarant whose statement was read, *viz.,* Craig Smith. Beard was called and did testify and denied the substance of his confession. Dyson did not testify and his confession was not read into the record. But there were sufficient allusions to it to make it clear to the court and the jury that Dyson was in fact incriminating Cheeks in the felony murder and was in fact an accomplice.

4. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

5. The repudiation of Beard's confession in the respect indicated is immaterial.

6. Tr. 509.

7. Mr. Justice Roberts stated, 429 Pa. 98–100, 239 A.2d at 798:

"We agree with the court below that this clear, unequivocal language of appellant, accepting as true the confessions of his accomplices, is sufficient to permit the introduction of the challenged statements as admissions of Cheeks himself. To conclude otherwise would *not only* be a sharp departure from the long established rule of both our own cases and of respected text writers, but would also extend the *Pointer* rationale far beyond that expressed by the Supreme Court.

"Since the *Pointer* and *Douglas* decisions it has been widely recognized that the sixth amendment right of confrontation shares a common raison d'etre with the common law rules of hearsay. In fact, it can be said that the *Pointer* rule is really one of Constitutional hearsay. Perhaps the main reason, at common law, for the exclusion of most out-of-court statements of declarants offered at trial for the truth of the assertions therein contained was that this procedure robbed the litigant of his opportunity to test the accuracy of those statements by cross examining their makers. So also, did the Court in *Pointer* note that 'a

Cheeks' counsel made objections to the foregoing evidence.[8]   Cheeks took the stand on his own behalf and denied that he made the above quoted statements to

major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him.' 380 U.S. at 406–407, 85 S.Ct. at 1069. This statement, as well as the hearsay evidence rationale, share at least two common, and in the present case extremely persuasive, requirements. In order to fall within either the *Pointer* or the common law hearsay prohibition the out-of-court statement must be both one whose truth cannot be adequately tested and one used in lieu of some witness. The evidence here challenged suffers from neither of these defects. Not only was the truth of both confessions expressly acknowledged by the very man against whom they were used at trial, but also, since Cheeks chose to acknowledge this truth as part of his own admissable confession it cannot be said that the accomplices' statements were used *in place* of *witnesses* against the accused. These confessions were used as part of Cheeks' own admission of guilt, their contents having been announced to the jury simply to elucidate precisely what it was that appellant himself declared to be accurate accounts of the crime. Cheeks was no more denied the right to cross examine his accusers than a man could be denied the right to cross examine himself.

"Moreover, the decision we reach today finds support in both previous state cases and eminent treatises on the law of evidence. * * * "

The present writer agrees with Mr. Justice Roberts' reasoning on this point. See Wigmore, Evidence, § 1075 at p. 108 (3d ed. 1940) : "If a party *expressly states* that a certain piece of testimony given by another person is correct, there can be no question that it becomes his statement by adoption, and is receivable as his admission." See also McCormick, Evidence (1954), § 246 at p. 525, and Commonwealth v. Oreszak, 328 Pa. 65, 195 A. 45 (1937).

8.   There has been some confusion as to whether or not the confessions of Smith, Dyson and Beard were introduced into evidence. For example, the prosecutor said in the course of his argument to the jury that it would "have Dyson's statement to read." This statement was incorrect for Dyson's confession was never physically before the jury but as is shown in this opinion was referred to in the presence of the jury and this reference clearly showed that Dyson's confession implicated Cheeks in the killing of Howell.   On the other hand, the confessions of Beard and Smith were in evidence and were before the jury at the time of its deliberations.

Confusion has arisen as is demonstrated by Cheeks' counsel's brief : Beard's confession was marked "C–8" for identification ; Cheeks' confession was marked "C–11" for identification ; and Smith's confession was marked "C–12" for identification.   There is no question however, that "C–8", "C–11" and "C–12" were admitted in evidence.   At pp. 603 through 610 of the trial transcript Commonwealth's exhibits, including those specifically named, other than Dyson's confession, were offered into evidence by counsel for the Commonwealth.   At p. 610 Judge Weinrott admitted these documents as Commonwealth exhibits, albeit there was some confusion in his mind as to whether or not he had done so previously.   Judge Weinrott apparently thought that the exhibits had already been introduced in evidence.   That they were admitted into evidence is proved by the following colloquy which took place between the prosecutor, Mr. Killeen, and Judge Weinrott: At p. 603, Mr. Killeen stated: "If Your Honor pleases, I offer all exhibits in evidence, C–1 through C–14." At p. 610, Judge Weinrott said : "I have already ruled these things may be admitted in evidence. * * * "

"Mr. Killeen : Well, I did move for the admission—

The Court : I am allowing all these things now, as indicated by me, and as they come in you are going to rest.

*       *       *       *       *

Mr. Stenographer, will you please note again that the defendant is here, and the lawyers are here, and Mr. Killeen, the Assistant District Attorney, is here.   The entire Jury is in the box, and you are now resting?

Mr. Killeen : Subject to the acceptability of the evidence.

The Court : You are resting?

Mr. Killeen :   The   Commonwealth rests."

At pp. 980–81 Judge Weinrott told the jury that they would have the statement of Beard to read.   At p. 984, he made a similar statement in respect to Cheeks' confession, and at p. 1037, he stated, "Both counsel have agreed on everything

the detective. He stated the following upon questioning by his counsel:

"Q. Now you signed a statement in which you said * * *. Now, you signed that didn't you?

A. No, sir—I signed it but—

Q. That is your signature at the bottom, isn't it?

A. Yes, sir.

Q. Is it true?

A. No, sir.

Q. Well, why did you sign it?

A. They told me that if I did not sign this statement and admit that I stabbed the man they were going to lock Ruby and her mother up and the State would probably take Ruby's baby [9] away after it was born.

Q. Who told you that?

A. The detective."

The trial court charged the jury as follows on the issue of the voluntariness of Cheeks' confession:

"Now, a confession, Members of the Jury, is a voluntary admission of guilt for an offense charged. It is the strongest evidence of guilt when, and only when, it is voluntary, because one will not voluntarily jeopardize his life or his liberty by confession to an untruth in the absence of some extraordinary motive.

"The law is zealous to preserve the right of the accused. If a confession is obtained by coercive measures, such a confession would violate due process. It is the Court's duty, in the first instance, to determine whether there is sufficient evidence of the voluntary nature of the confession. This point is raised when the Commonwealth offers this confession and asks that it be read. The defendant may then cross-examine the person who took the confession, and if he is unsuccessful in showing that the confession was not properly secured, the Court allows the confession to be read. And that is what happened in this case. But a confession so admitted into evidence is not conclusive as to whether it is voluntary or not. All that was determined is that is a question for you, the Jury.

"To determine so, in this case, Members of the Jury, it becomes your important duty to pass upon the validity of the confession that was read and the admission testified to by defendant. Now, let me give you some instructions in this connection so that you may be helped in your deliberations on this very vital phase of this case. Whether a confession is voluntary depends largely upon the facts of the individual case. The sex, the age, the disposition, the education, experience, and previous training of the accused, his mental qualities, his physical health, and his surroundings are all matters to be considered by the Jury in determining whether or not the confession was voluntary.

"Prolonged interrogation is not in itself a ground for invalidating a confession, nor is it fundamentally unfair unless the interrogation was so long in duration as to amount to mental and physical coercion and duress.

"Here, the confession, while signed, is denied and claimed to be involuntary. If you believe that the defendant was coerced and compelled by reason of force and violence or threats, I have not heard anything, but again, for you to remember, with violence or threats except the statement we heard about Ruby and her mother, but all that is for you to determine; at any rate, they would not be under force or violence or threats or intimidations of any kind to make these statements, then they would not be his voluntary statements and you should ignore them, even if you believe them to be true. If you find that he made these statements voluntarily, as stated therein, then you will give them consideration and de-

[which] will go out with the jury except the statement of William Dyson."

9. Cheeks admitted that he was the father of Ruby Lawson's unborn baby.

termine what is the real truth of the matter. You may believe, Members of the Jury, all or parts or none of the statement. So, in considering the signed statement, you must first determine whether such statement was freely and voluntarily made, without any inducement or expectation of any promise, benefit or fear of any threatened injury.

■ "In considering whether the defendant's oral or written statements were voluntary, the Jury should give heed to any evidence, and all evidence, which has been presented and which you may believe had induced the defendant to make such a statement. You will give consideration as to whether or not the defendant understood the questions asked, and whether the witness understood the answers and accurately recollected and reported them. Also, consider any evidence that may have been presented to you which you may believe might have induced the defendant to make such statements." [10, 11]

## I.

In his oral argument and original brief filed in this case Cheeks took the position that the use of extrajudicial confessions "by nontestifying declarants" constituted "an almost ultimate violation of the hearsay rule and the right to cross-examine and confront witnesses under Pointer v. Texas," note 4, *supra*, and Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Citing the decision of this court by Chief Judge Hastie in United States ex rel. Staino v. Brierly, 387 F.2d 597 (3 Cir. 1967), Cheeks insists that the confessions allegedly adopted by him were superfluous, merely reiterating the facts allegedly admitted by him in his confession, and that therefore the minds of the jury must have been overborne. He asserts that the danger is that alluded to by Judge Hastie in *Staino* "magnified by three".[12] "What

10. Tr. 1024–1028.

11. Cheeks' brief contains the statement that he did not have the benefit of a "preliminary screening of his confession in a Jackson-Denno [378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964)] hearing." His brief goes on to state in a star note: "The granting or holding of such a hearing would not be determinative of the question before this Court for even if Cheeks' confession was found not to be clearly involuntary in a Jackson-Denno hearing, the jury would still be entitled to believe Cheeks and ignore the statement and defense counsel would be entitled to instructions to that effect. Rule 323, Pennsylvania Rules of Criminal Procedure, 19 P.S. Appendix; Commonwealth ex rel. Butler v. Rundle, 429 Pa. 141 [239 A.2d 426] (1968); 1 Laub, Trial Guide, § 169.6 at p. 346; 4 Laub, Trial Guide, § 581.1 at p. 140." But no such instructions were requested by Cheeks' counsel. See, however, heading "III" of this opinion.

The statement that Cheeks did not have the benefit of a Jackson v. Denno hearing is incorrect. See Tr. 449, *et seq.* Trial Judge Leo Weinrott held a Jackson v. Denno hearing and ruled that Cheeks' confession was voluntary. United States v. Inman, 352 F.2d 954, 956 (4 Cir. 1965) required that the trial judge must be convinced beyond a reasonable doubt as to the voluntariness of the confession before admitting it into evidence. Cf. Clifton v. United States, 125 U.S.App. D.C. 257, 371 F.2d 354 (1966), cert. den. 386 U.S. 995, 87 S.Ct. 1312, 18 L.Ed. 2d 341 (1967), by Circuit Judge (now Chief Justice) Burger. It is unnecessary to decide this question.

Cheeks' counsel continued to object to the admission of Cheeks' confession into evidence but was overruled. Cheeks' counsel also objected to the reading of the statements and references to the statements of Cheeks' accomplices, seemingly on the ground that these were not voluntary. Beard denied on the witness stand that his statement was voluntary. I hold that under the circumstances at bar the voluntariness of the confessions of Cheeks' accomplices was not a relevant issue.

12. Cheeks' counsel in this case concede that the facts of *Staino*, *supra*, are far different from those at bar but they take the position that there is an analogous principle applicable here and that the

jury," say Cheeks' counsel, "even if it believed Cheeks in his testimony that his statement was coerced and false, could help but be impressed by the three [sic [13]] inadmissible but incriminating statements of" Dyson, Smith and Beard? But if Cheeks adopted his accomplices' confessions in his own confession, as testified to by Detective Seifert and as found by Mr. Justice Roberts in Commonwealth v. Cheeks, *supra*, Cheeks' confession falls neither within the common law hearsay prohibition nor within that of *Pointer*. If the jury concluded the confession was voluntary it had the right to consider the adoptive confessions. The present writer cannot agree that these contentions of Cheeks' counsel are valid though I will endeavor to answer Cheeks' counsel's rhetorical question under heading "III" of this opinion.

## II.

■ An important underlying issue in this case must be discussed and determined. Beard's signed confession was marked "C–8" for identification, was admitted in evidence [14] and was read to the jury.[15] Beard was cross-examined extensively.[16] The prosecutor re-examined him to show that his statement was freely given and that he understood its contents.[17] This preceded the Jackson v. Denno hearing.[18] Because Beard testified at the trial and not only was available for cross-examination but was in fact cross-examined, Beard's confession presents no issue under Pointer v. Texas, *supra*, and Bruton v. United States, *supra*. But let us examine the status of the other confessions.

Immediately prior to the Jackson v. Denno hearing the prosecutor informed the trial Judge that he had "three separate statements", "one given by the defendant himself; two others given by other parties that were read to the defendant." [19] The Court replied: "All right, it is all part of it." [20] The Court went on to ask: "And the last statement taken from him was based on the reading of those two statements, whatever it was?" [sic.]. To which the prosecutor answered, "Yes." [21] Counsel for Cheeks stated: "I hope that my friend [the prosecutor] did not mean that he expects to read the statements given by some other people—" and the prosecutor answered, "Yes." [22] Counsel for Cheeks also stated: "Of course, I don't have any objection of [sic] that [23] being read so that we can inquire as to whether or not it is voluntary, but I do have objections to the reading of other statements by people." The Court announced that he would admit "it", seemingly Cheeks' own statement, and to this Cheeks' counsel took an exception.[24] Cheeks' statement was later read in full in the presence of the jury. Seifert next testified that he took a statement from another of Cheeks' accomplices, Smith, and this confession

---

reasoning employed in the cited case is "of great value" in disposing of the case at bar.

13. Counsel for Cheeks is technically, but not actually, in error in this statement. Dyson's confession was before the jury only by way of Cheeks' adoptive confession and the references to it by Seifert. As I have said, Dyson's confession was never physically before the jury. See note 8, *supra*.

14. Beard's confession was admitted at the same time as the other accomplices' confessions. See note 8, *supra*. See also Tr. 394.

15. Tr. 396–403.

16. Tr. 408–430.

17. Tr. 430–440.

18. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

19. Tr. 449.

20. Tr. 450.

21. Tr. 450.

22. Tr. 450.

23. What Cheeks' counsel was referring to, when he used the word "that" is not clear.

24. Tr. 453.

"C–12" was admitted in evidence.[25] Seifert then read Smith's statement in full in the presence of the jury. Cheeks' counsel objected to its admission in evidence on the ground that it was hearsay, and also made a further unclear objection which seems to be based upon the fact that Smith had not testified and therefore his confession had a different status than that of Beard.[26] See *Pointer* and *Bruton, supra.* Smith's confession goes into the details of the commission of the crime in very considerable detail and covers some seven pages in length. The details of the confession are convincing. It was read to the jury in full. Seifert also testified again that Cheeks had said that the statement was "true and correct." [27]

■ Seifert testified also that he had confronted Cheeks with the fact that three "boys", Beard, Smith and one Ernest Williams, "had implicated him in the killing." Ernest Williams made an oral statement, not a confession, implicating Cheeks. Seifert also testified that Ernest Williams' twin brother Earl had made an oral statement, not a confession, implicating Cheeks in the killing. These statements were not included in Cheeks' adoptive confession and were inadmissible hearsay.[28] But they were brought on the record by Cheeks' own counsel by way of what appears to be cross-examination. There was no motion to strike or to direct the jury to disregard this testimony. The confessions of

Beard and Smith went to the jury as indicated in note 8, *supra.* Dyson's confession did not go to the jury.

Cheeks was asked, according to his own confession, as has been stated, whether the confessions of Beard, Smith and Dyson were correct and he replied categorically that they were except in respect to the small, immaterial detail of Beard's confession relating to the knife. The Government insists that the confessions are unitary in nature and since Cheeks adopted them, no *Pointer* or *Bruton* problems are presented. With this I would agree were it not for formidable issues relating to the charge to the jury discussed immediately hereinafter.

### III.

■ The Commonwealth trial court charged the jury that it had to find that Cheeks' confession was voluntary before the jury could consider it. Was this enough? Should not the court also have charged the jury that if it found Cheeks' confession to have been coerced the confessions of his accomplices were not to be considered by the jury as proof of his guilt.[29, 30] Under the ruling of Jackson v. Denno the jury is not required to determine the voluntariness of a defendant's confession. But Pennsylvania has adopted an extension of Jackson v. Denno and requires the issue of voluntariness to be passed on not only by the trial Judge but also by the jury. Com-

---

25. See notes 8 and 14, *supra.*

26. Tr. 512–513, 515 *et seq.*

27. Tr. 525.

28. Tr. 525, 531.

29. After the argument our Clerk wrote the following letter to counsel on August 13, 1969:

"Gentlemen:

The Court desires to have you answer the following questions by additional typewritten briefs as soon as possible.

(1) (a) Did or did not the trial court commit error when it failed to charge the jury that in the event the jury found Cheeks' adoptive statement to have

been coerced, then the statements of Smith and Beard and the references by Detective Seifert to Dyson's statement were not to be considered by the jury?

(b) Does this error, if it be such, rise to constitutional dimensions?

(2) Does the fact that Cheeks' counsel made no request for instructions in respect to (1) (a), *supra,* or to object to the charge constitute a waiver?"

Neither the Commonwealth nor Cheeks have requested oral argument on the questions propounded by the court.

30. The present writer has referred in this opinion *ante* to the special status of Beard's confession since he testified at Cheeks' trial and was cross-examined.

monwealth v. Schmidt, 423 Pa. 432, 224 A.2d 625 (1966), and Commonwealth v. Howard, 212 Pa.Super. 100, 239 A.2d 829 (1968). Cf. Mr. Justice Black's opinion in Jackson v. Denno, at 401, 404–410, 84 S.Ct. 1774. It is contended, therefore, by the Commonwealth that the failure of the trial Judge to instruct the jury that if Cheeks' confession was found by it to be involuntary the confessions of his accomplices could not be considered as evidence of Cheeks' guilt, could not constitute federal constitutional error under *Jackson.* The present writer agrees in respect to Cheeks' right under the Confrontation Clause.

I point out, however, that it could be argued plausibly, at least prior to the declaration of *Bruton, supra,* at 129–137, 88 S.Ct. 1620, respecting the futility of limiting instructions, that such instructions would have been required in the case at bar. I reach this conclusion because I think that it can scarcely be assumed that the twice or thrice-told tale

of Cheeks' guilt through the confessions of his accomplices would be without effect upon the jury and the verdict.[31] I do not say, however, that the ruling of *Bruton* in respect to the inadequacy of limiting instructions would necessarily be binding on a State tribunal under the circumstances at bar though assuredly *Bruton* would be powerfully persuasive. But this difficult question need not be decided.

■ What, however, are Cheeks' rights under the Fourteenth Amendment assuming *arguendo* that limiting instructions should have been given that if the jury found Cheeks' confession to be involuntary then the confessions of Cheeks' accomplices should be disregarded. I do not say that jury instructions cannot be the business of federal courts reviewing State convictions by way of habeas corpus. The present writer can imagine circumstances under which a charge might be so grossly inappropriate or so fundamentally unfair as to deny the

---

31. In *Bruton* the Supreme Court rejected the proposition that a jury in determining the guilt of an accused could be relied on to ignore the incriminating confessions of the accused's partners in the crime. It can be argued that the giving of limiting instructions would have been useless because of the ruling of the Supreme Court that such instructions really could have no limiting effect. But such a conclusion under the circumstances of Cheeks' trial might require either the omission of a jury, which would raise immediately major constitutional issues, or the Commonwealth would have to forego the use of the very important confession evidence at a new trial which would be required here. On the other hand, it could be argued that some adjustment or accommodation should be made between the Commonwealth and the accused whereby the Commonwealth might employ the evidence of Cheeks' accomplices' confessions, the trial Judge, on behalf of Cheeks, instructing the jury as to the limitation to be imposed upon such evidence. The doctrines of *Bruton* and *Pointer* were designed to aid the court in affording a criminal defendant a fair trial; to hold that limiting instructions would be useless and should not be given under the operative facts of Cheeks' trial would kill the spirit of these Supreme Court decisions while adhering to their letter.

The Supreme Court may not have intended the stated doctrine of *Bruton* to be applicable under all circumstances, for example, such as those attendant on Cheeks' trial. The case at bar, of course, does not possess all elements of *Bruton* for in that case Bruton and his codefendants were indicted in the same indictment and tried at the same trial. But Cheeks and his accomplices are in a relationship substantially like that of Bruton and his codefendants for they participated in the same crime. Smith was indicted on a separate felony murder charge for the same crime in the Court of Oyer & Terminer of Philadelphia County. A copy of Smith's indictment was certified to this court as part of the record in this case.

(*Bruton* was held to be retroactive in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), and Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), seems to assume that *Bruton* is retroactive. The present writer can find no Supreme Court decision holding Pointer v. Texas, *supra,* to be retroactive but the lower courts have held it to be so. See *e. g.,* Hooper v. Swenson, 401 F.2d 352, 355 (8 Cir. 1968), and United States ex rel. Floyd v. Wilkins, 367 F.2d 990, 993 (2 Cir. 1969).)

State defendant due process of law. But a failure to give limiting instructions of the kind suggested here does not in my opinion constitute a denial of fundamental fairness or a violation of due process. The trial Judge did instruct the jury that if they found Cheeks' confession to be involuntary they should ignore it. Incorporated in Cheeks' confession, by his own express adoption, were the confessions of his accomplices. Since the jury was told that Cheeks' confession adopted the confessions of his accomplices the jury possibly might have been able to infer that if Cheeks' confession was rejected by them on the ground that it was involuntary then the confessions of his accomplices were to be disregarded. But that the jury made such an inference cannot be demonstrated on this record. Such an inference, conceivable as it may be to a trained legal mind, cannot be deemed to take the place of or perform the service of an adequate instruction. See note 8, *supra*. But, as has been said, no objection was made to the charge in this respect. It follows, therefore, that we cannot reverse the judgment of the court below.[32]

## IV.

The case at bar is one of some importance and may attract the attention of the Reviewing Court. The present writer therefore deems it desirable to dispose of two other issues, one raised by us and the other arising out of Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), as appears hereinafter.

■ (a) I cannot conclude as asserted by the Commonwealth that the failure of Cheeks' counsel to object to the failure of the trial Court to deliver the limiting charge suggested in this opinion constitutes a waiver. There is no suggestion in the record that the limiting instruction was not requested as a matter of trial tactics. Cf. Henry v. Mississippi, 379 U.S. 443, 450, 85 S.Ct. 564, 13 L. Ed.2d 408 (1965). See Reeves v. Warden, Maryland Penitentiary, 346 F.2d 915 (4 Cir. 1965). In my opinion there was no waiver.

(b) I have considered with care the untainted direct evidence against Cheeks in order to determine whether it is so overwhelming that the doctrine of harmless constitutional error announced in Harrington v. California, *supra*, is applicable. I conclude that this evidence proves Cheeks' guilt beyond a reasonable doubt but that it is not overwhelming.

The judgment must be affirmed.

FREEDMAN, Circuit Judge (concurring).

I join Judge Biggs in the affirmance of the district court's denial of habeas corpus.

It would indeed have been preferable for the trial judge to have called the jury's attention specifically to the separate confessions of Smith and Dyson when he instructed them to determine whether Cheeks' confession, which adopted their statements, was voluntary. But it would be too great a strain on the concept of fundamental fairness to declare the failure to do so a violation of due process.

The trial judge did instruct the jury that if they found Cheeks' confession to be involuntary, they should ignore it. Since the jury had already been told that the confession of Cheeks adopted the statements of Smith and Dyson, the jury knew that if they rejected Cheeks' confession they should also disregard the statements by Smith and Dyson. Additional emphasis on this point may have been desirable, but its absence does not establish error of constitutional dimension.

32. See 28 U.S.C. § 2111 which provides: "On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." and Rule 52(a), Fed.R. Crim.Proc., 18 U.S.C., which provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." See also Fed.R.Civ.Proc. 61.

In these circumstances, it is unnecessary, in my view, to decide whether Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), precludes a finding of constitutional error in the instructions to the jury on voluntariness of a confession once a judge has ruled that the confession is voluntary and may be considered by the jury.

Dooling, J., dissented in part.