### Commonwealth v. Grucella

*Charles Lemmond,* Assistant District Attorney, for Commonwealth.

*William Keller,* for defendant.

OLSZEWSKI, J., November 30, 1971.—This case comes before the court on defendant's motion for new trial and/or in arrest of judgment.

On October 29, 1969, defendant was convicted in a trial by jury of the charge of receiving stolen goods. The evidence showed that on April 11, 1967, police officers discovered four revolvers in a suitcase hidden underneath a refrigerator in an apartment rented by Mrs. Geraldine Hackling, at 65 Mechanics Lane, Plymouth, Pa. These revolvers were later determined to have been stolen from Crawford's Sporting Goods Store

located at 3 East Main Street, Nanticoke, Pa., some time between 9 p.m. Friday evening, March 24, 1967, and 7:15 a.m. on the following day. Defendant had been present in the apartment where and when the guns were found, and he and his co-defendant, William V. Verdekal, admitted to the police that they had taken the guns into the residence.

In his motion for new trial and/or in arrest of judgment filed November 3, 1969, defendant set forth the following grounds:

"1. The verdict is contrary to the evidence;

"2. The verdict is contrary to the weight of the evidence;

"3. The verdict is contrary to the laws."

Defendant also reserved the right to file additional and supplemental reasons for a new trial within 30 days after the notes of testimony taken at the trial had been transcribed and a copy made available to counsel for defendant. These three original reasons are deemed to have been abandoned by defendant, since no oral argument was presented on these questions and his brief in support of his motion states that he is pursuing only the following questions in regard to his motion for new trial:

"(1) That the Court erred in allowing the Commonwealth to introduce into evidence the clothes and other contents of the suitcase found in the refrigerator.

"(2) The Court erred in not declaring a mistrial because testimony of an arrest on a different charge was allowed and said testimony was so prejudicial that a fair trial was impossible.

"(3) The Court erred in denying a motion for demurrer on behalf of defendant since the Commonwealth failed to prove possession of said revolvers which is one of the elements of the crime of receiving stolen goods.

"(4) The Court erred in not declaring a mistrial because a confession by one co-defendant was introduced at a joint trial in violation of Bruton v. U.S., 391 U.S. 123 (1968)."

Since the notes of testimony were filed on February 26, 1971, and no additional reasons were filed, either within the 30-day time limit set or at any time thereafter, these additional reasons are improperly raised and need not be considered by the court:[1] Pennsylvania Rules of Criminal Procedure 1123(a) and (b).

However, in any event, we find these four reasons, raised for the first time in defendant's brief received by the court on November 5, 1971, to be without merit.

In his first additional reason, defendant contends that the court erred in allowing the Commonwealth to introduce into evidence the clothing (men's pants, shirts and gloves, and some ladies' stockings) found in the suitcase along with the stolen guns. He complains that these items were prejudicial because they indicated to the jury that defendant was involved in robberies not connected with the case before them. We do not agree. In a case such as this, where the Commonwealth must prove as an element of the crime not only that the revolvers were stolen, but also that defendant *knew* that they were stolen, evidence tending to show that the articles were hidden among clothing rather than left out in the open is relevant and proper. In this particular case, the articles of men's clothing were also relevant to show that defendant and his male codefendants were more than casual visitors to the premises.

In addition, there being no evidence whatever presented to place in the minds of the jury an inference

---

[1] Briefs of counsel are not part of the record and may not be considered as such: W. W. Grainger, Inc. v. Ruth, 192 Pa. Superior Ct. 446 (1960).

that defendant had committed robberies wearing this clothing, we cannot find that he was prejudiced by their admission.

In his second additional reason, defendant contends that the court erred in not declaring a mistrial on the ground that testimony that defendant was arrested at the Hackling apartment for a crime other than the present receiving-stolen-goods charge was permitted, and that such testimony was so prejudicial that defendant was denied a fair trial. However, there was no testimony given at the trial that implied that defendant's arrest on April 11, 1967, was for any crime other than the present receiving-stolen-goods charge. Officer Eugene Brennan, of the Pennsylvania State Police, testified at the trial that, "Grucella was placed under arrest by Sgt. Miller on a warrant we had for his arrest and he was immediately advised of his constitutional rights by myself". This statement by Officer Brennan does not indicate on what charge defendant was arrested by Sergeant Miller, and there was no testimony given by him or any other witness during the course of the trial to indicate that the arrest was for a different crime.

It is true that Sergeant Miller testified at a suppression hearing, held outside the hearing of the jury, that upon discovering defendant asleep in the upstairs bedroom of the Hackling home he had arrested Grucella on the basis of a warrant of arrest issued the day before by Alderman Francis Murphy. On cross-examination by defendant's counsel, Sergeant Miller was asked: "Q. He was arrested for larceny of a motor vehicle, is that correct? A. That's correct." Since the fact of defendant's arrest for another crime was brought forth by his own counsel, defendant cannot now be heard to complain. More importantly, since the jury was excluded from the suppression hearing and did not hear this testimony,

they could not have been affected or prejudiced by it in any way.

In addition, even if the jury had by some stretch of the imagination concluded that defendant was arrested on April 11th for a crime other than the receiving-stolen-goods charge before them, we can see no prejudice to defendant in light of the impeachment evidence introduced by the Commonwealth which showed that he had, in fact, been convicted of prior crimes.

In his third additional reason, defendant states that the court erred in denying a motion for demurrer, since the Commonwealth failed to prove possession of the stolen revolvers. In order to sustain a conviction on a charge of receiving stolen goods, the Commonwealth has the burden of proving three distinct elements of the crime: "(a) that the goods are stolen; (b) that the defendant received such goods; and (c) that he received them knowing, or having reasonable cause to know, that they were stolen": Commonwealth v. Davis, 444 Pa. 11, 15 (1971).

As to the first element, the Commonwealth presented the testimony of Steve Killian, proprietor of Crawford's Sporting Goods Store, who stated that he had personally locked the store doors on Friday evening, March 21st, at about 9 p.m., but that when he returned the following morning at approximately 7:15, he found that the plate glass in the front door had been knocked out, leaving an opening wide enough for him to walk through. He stated that four revolvers which had been in the store's stock on Friday night were discovered to be missing. He identified Commonwealth's Exhibits 1-4 as being these revolvers. He further testified that he had given no one permission to enter the store or to take the weapons. Sergeant Frank Miller, of the Pennsylvania State Police, testified that on April 11,

1967, he had discovered the guns marked Commonwealth's Exhibits 1-4 in a small suitcase hidden underneath a refrigerator at 65 Mechanics Lane, Plymouth, Pa. He stated that defendant and his co-defendants, William Verdekal and Ronald Rakshys and one Geraldine Hackling, were present in the residence when the guns were found. Corporal Eugene Brennan and Corporal Eugene Maguire corroborated Sergeant Miller's testimony.

As to the second element, that defendant received stolen goods, defendant in his brief complains that since he was asleep in an upstairs bedroom when the officers arrived at the Mechanics Lane apartment, he could not have properly been found to have been "in possession" of the guns. He chooses to ignore and purposely disregard the testimony of three police officers who stated that defendant *admitted* taking the stolen revolvers into the Hackling residence.[2]

We find this testimony of Sergeant Miller and Corporals Brennan and Maguire sufficient to prove that defendant had, at the very least, exercised conscious control or dominion over the revolvers and had, therefore, "received" the stolen property: Commonwealth v. Davis, supra, page 15.

The third element of the crime of receiving stolen goods, that defendant received the articles knowing or having reasonable cause to know that they were stolen, was shown here by the circumstances under which the items were discovered. The police officers found the revolvers hidden among clothing in a small suitcase concealed below a refrigerator in the portion of the refrigerator where the compressor unit is lo-

---

[2] Defendant denied making such an admission; however, this was purely a matter of credibility which the jury chose to resolve in favor of the Commonwealth's witnesses.

cated. The bottom panel of the refrigerator had to be removed in order to view the suitcase. In addition, the serial numbers of one of the revolvers, Commonwealth's Exhibit No. 4, had been filed off and obliterated.

Finally, in his fourth additional reason, defendant contends that the court erred in not declaring a mistrial on the ground that a confession of defendant's codefendant, William Verdekal, was introduced against him in violation of the law set forth in Bruton v. United States, 391 U.S. 123 (1968).

Sergeant Miller testified that the following colloquy took place between him, defendant Grucella and codefendant Verdekal:

". . . Q. Did you, Sgt. Miller, thereafter have any conversation with Charles Grucella or William Verdekal that morning?

"A. I did.

"Q. And was it at that time in the identification room?

"A. Yes, it was then.

"Q. All right. With whom did you have a conversation?

"A. With both of the defendants.

"Q. Would you relate, Sgt. Miller, the substance of your conversation and was it a question and answer format? Did you ask any questions of the defendants?

"A. Yes, I did.

"Q. And would you indicate to the jurors what questions you asked?

"A. I asked them if they could account for the presence of the guns in the house.

"Q. And did you receive an answer from any of the defendants?

"A. Well, I did, but first I think it was Lt. McGroarty

mentioned that before we say anything have these men been warned of their right?

"MR. KELLER: I object to what Lt. McGroarty said.

"BY THE COURT: Sustained.

"A. Before I spoke to them I read them the constitutional warnings.

"Q. Yes, and we have been through that. You did read them their constitutional warnings?

"A. I did.

"Q. And after having read them their constitutional warnings, you then asked them certain questions?

"A. Yes.

"Q. And the questions I believe that you said you asked were what?

"A. I asked them how they could account for the guns being in the house.

"Q. And tell us what happened?

"A. Grucella at that point appeared to be the spokesman and—

"Q. Did he confer with Mr. Verdekal?

"A. He did. He then said—He was referring to Miss Hackling or Mrs. Hackling and he said, 'Leave the woman out of this,' He said, 'We brought the guns in.' . . ."

". . . Q. Immediately after asking that question of Mr. Grucella and immediately after receiving that answer, did you direct any questions to the other defendant in this case, Mr. Verdekal?

"A. I did.

"Q. Would you relate what that question was?

"A. I said, 'Do you agree this is what happened? Did you bring the guns in, you as an individual?'

"Q. And what did Mr. Verdekal answer?

"A. He said yes. . . ."

Corporal Eugene Brennan gave a similar account of the conversation:

". . . THE WITNESS: The two defendants in this case were there, along with another man and a woman. Sergeant Miller asked them generally, I don't know the exact words, but how they could account for the guns that were found in the home.

"MR. KELLER: Your Honor, I'll have to object if he can't quote Sergeant Miller.

"BY THE COURT: Overruled.

"MR. LEMMOND:

"Q. And did either of these defendants then make answer to Sergeant Miller?

"A. Yes, they did.

"Q. Which one answered first?

"A. Grucella.

"Q. And is Mr. Grucella here this morning?

"A. Yes, he is.

"Q. Seated where, Corporal?

"A. To the rear of second counsel table there, in the rear.

"Q. And of the three men sitting there now, which one is Grucella?

"A. In the center.

"Q. All right. What was his answer to Sergeant Miller?

"A. Well, he conferred with the other two men there, and then said that they agreed that they had taken the guns into the house and the woman had nothing to do with it.

"Q. All right. Did Sergeant Miller then ask any questions of the defendant Verdekal?

"A. Yes, he did.

"Q. What was that question?

"A. Well, he asked him if he agreed with what Grucella had just said, that they had conferred with each other about. And he said yes, he agreed that they had taken the guns in the house. . . ."

Both defendant Grucella and co-defendant Verdekal took the stand and denied making any statements whatsoever to the police officers.

We find that defendant's constitutional right to confrontation protected by Pointer v. Texas, 380 U.S. 400 (1965), and Bruton v. United States, supra, were not violated under the circumstances of this case.

First of all, we find that Verdekal's statement was, in effect, "adopted" by Grucella. It was Grucella who was the spokesman for the group, and it was he who first told the police officers that he, Verdekal, and Rakshys had taken the guns into the Hackling home. The police officers then asked Verdekal and Rakshys if they agreed with Grucella's account, and they both answered in the affirmative. We do not feel that it was necessary to thereafter ask Grucella if he agreed with Verdekal's and Rakshys' statements that they agreed with him, for it was obvious that he agreed with the substance of their statements, since he had made the initial admission moments earlier. Under these particular circumstances, we find that each defendant had adopted the admissions of the other two: Commonwealth v. Cheeks, 429 Pa. 89 (1968); United States ex rel. Cheeks v. Russell, 424 F. 2d 647 (1970).

Also, as was held in United States ex rel. Catanzaro v. Mancusi, 404 F. 2d 296 (1968), cert. denied, U.S. ex rel. Catanzaro v. Mancusi, 397 U.S. 942, 90 S. Ct. 956 (1970), where defendant and co-defendant *both* give confessions which are substantially the same, no error is committed by their introduction at a joint trial. The court stated, at page 300:

"The reasoning of Hill and Bruton is not persuasive here. Both of those cases involved a defendant who did not confess and who was tried along with a codefendant who did. In our case Catanzaro himself confessed

and his confession interlocks with and supports the confession of McChesney.

"Where the jury has heard not only a codefendant's confession but the defendant's own confession no such 'devastating' risk attends the lack of confrontation as was thought to be involved in Bruton. See 391 U.S. at 136, 88 S. Ct. 1620."

Secondly, and more important, since co-defendant Verdekal, whose statement was used against defendant, took the stand in this case and was available for cross-examination, we find that defendant Grucella's constitutional right to confrontation was not violated. In Bruton v. United States, supra, the confession of his co-defendant Evans, which implicated Bruton, was introduced in the latter's trial. Evans did not take the stand. The court found that Bruton's right to confrontation had been violated and in quoting the Advisory Committee on Rules (Federal Rules of Criminal Procedure) stated:

" 'A defendant may be prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice. . .' ": Bruton v. United States, supra, at page 132.

In the case at bar, co-defendant Verdekal did, in fact, take the stand and testify at the joint trial.

This rule was more specifically stated in United States ex rel. Cheeks v. Russell, 424 F. 2d 647 (1970). There, defendant Cheeks was convicted of murder. He and his three accomplices had made certain statements to the police. At Cheeks' trial, these statements of the three accomplices were used against him. Two of the men, Smith and Dyson, did not appear at the trial but the

third, Joseph Beard, did appear and testify. The court there stated, at page 653:

. . . "Because Beard testified at the trial and not only was available for cross-examination but was in fact cross-examined, Beard's confession presents no issue under Pointer v. Texas, supra, and Bruton v. United States, supra."

In the instant case, the factual situation is slightly different from that in the Cheeks cases because here the co-defendant was not actually cross-examined by defendant's counsel. Instead, he took the stand as a witness on his own behalf and on behalf of defendant Grucella and testified on direct examination only. Of course, he could have been cross-examined by defendant Grucella's counsel should counsel have chosen to do so. In a recent case involving this exact set of circumstances, the United States Court of Appeals for the Ninth Circuit made the following decision:

"We conclude that where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments": Nelson v. O'Neil, 402 U.S. 622, 29 L. ed. 2d 222, 91 S. Ct. 1723, 39 Law Week 4633 (1971).

Accordingly, we find that defendant Grucella was not denied his constitutional rights under the Sixth and Fourteenth Amendments of the United States Constitution.

Accordingly, we enter the following

## ORDER

Now, November 30, 1971, at 2 p.m., it is ordered,

adjudged and decreed that defendant's motion for new trial is hereby denied.